[In Bank.—No. 7,414.]

## W. H. BARTON *v.* I. S. KALLOCH ET AL.

ELECTION OF CITY AND COUNTY OFFICERS IN SAN FRANCISCO—CONSTITU-
TIONAL LAW.—The Constitution did not change the time for electing city
and county officers in San Francisco; but such elections are still governed
by the Act of April 2nd, 1866 (as amended by the Act of March 30th,
1872), and take place in the odd-numbered years.

ID.—ID.—ID.—MUNICIPAL AND COUNTY OFFICERS.—The provisions of § 10,
article xxii, of the Constitution, refer only to the officers mentioned in § 20 of
article xx, "as provided for by this Constitution"; that is to say, only to
those officers who derive their right to hold office immediately from the
Constitution, and whose offices are created by the Constitution itself; and
do not refer to municipal or county officers.

ID. — ID. — ID. — ID. — McKEE, concurring, was of the opinion that the
sections of the Constitution referred to apply to all offices—whether State
or county—except municipal.

ID.—ID.—ID.—ID.—MYRICK, J., dissenting, was of opinion that provisions
in question apply to all offices, State, county, and municipal.

ID. — ID. — ID. — ID.— ROSS, J., and· MORRISON, C. J., concurring: It may
have been and probably was contemplated by the framers of the Constitu-
tion, that, when the legislature should provide for the election of county,
township, and municipal officers, it would require such elections to be held
upon the even-numbered years;,but whether the legislature, when it shall
act, must do so, is a question not involved in this case.

APPOINTMENT OR ELECTION OF COUNTY OFFICERS—CONSTITUTIONAL LAW.—
It seems that under § 5 of article xi of the Constitution, the legislature has
the power to provide that all county officers shall be *appointed*, instead of
being *elected*.

ID.—ID.—McKINSTRY, J., concurring in the judgment, dissented from the
proposition that the legislature has power, under the Constitution, to de-
prive the people of a county or township of the choice of county or town-
ship officers; and was of opinion that full force and effect could be given to
§ 5, article xi, of the Constitution, by construing it as authorizing a system
by which some of the county and township officers shall be *elected*, and the
others *appointed* by those elected; as, for example, that boards of super-
visors or boards of township trustees should be elected, and certain county
or township officers appointed by those boards, respectively.

APPLICATION for a writ of *mandamus* to I. S. Kalloch and
others, constituting the board of election commissioners of San
Francisco.

*Jas. A. Waymire*, for the Plaintiff.

The election of September 3rd, 1879, was the first election un-
der the Constitution (Const. art. xxii, § 12) ; and the officers then
elected for the City and County of San Francisco were elected
for one year only.   (Const. art. xxii, § 10 ; art. iv, §§ 3, 5 ; art.
v, §§ 2, 15, 17 ; art. vi, §§ 3, 6 ; art. ix, § 3 ; art. xii, § 22 ;

art. xiii, § 9 ; art. xx, § 20.)    From the above citations, it is clear that the Constitution has changed the time for holding the general election from September of the odd-numbered years to November of the even-numbered years ; and that the successors of such officers must be elected at the general election of November 2nd, 1880.    (Const. art. xxii, § 10.)

*W. T. Baggett*, for the Defendant.

THORNTON, J.:

The question presented for decision in this case is, whether an election of the officers of the City and County of San Francisco is required by law to be held in the year 1880.    If such election is required, the writ must be allowed, *secus* if not.    It is contended that the statute law requires such election ; that if not so required by the statutes on the subject, it is by the provisions of the Constitution.    These contentions will be considered in the order stated.    By the first section of the act of the legislature, approved April 2nd, 1866 (Stats. of 1865–6, 718), it was provided as follows : "There shall be elected hereafter for the City and County of San Francisco, by the qualified electors thereof, at the times herein after mentioned, and in the manner prescribed by law for the election of State and county officers, one mayor, who shall be *ex-officio* president of the board of supervisors, a county judge, police judge, an attorney and counselor, probate judge, district attorney, sheriff, county clerk, recorder, treasurer, auditor, tax collector, assessor, coroner, public administrator, surveyor, superintendent of common schools, superintendent of public streets highways and squares, chief of police, harbor master, and State harbor commissioner." The third, fourth, and fifth sections of the act are as follows : Section 3. "All elections for city and county officers, except as provided in § 2 of this act, shall be held in said city and county on the days prescribed by law for holding the general elections throughout the State, except in the years when no general election is provided for by law, when elections for city and county officers shall be held on the first Wednesday of September of said years."    (§ 2 refers to county judge, probate judge, and police judge, who are to be elected at the special judicial elec-

tions.)     Section 4. "At the first election held under this act, on the first Wednesday in September, 1866, and at the election held every second year thereafter, there shall be elected an attorney and counselor for said city and county, an auditor, a tax collector, a public administrator, a superintendent of public streets highways and squares, a chief of police, and in each of the first, third, fifth, seventh, ninth, and eleventh wards, one supervisor and one school director, who shall hold their offices for the term of two years from and after the first Monday of December subsequent to their election, and until their successors are elected and qualified."     Section 5. "At the second election held under this act, on the day of the general election held in the year 1867, and at the election held every second year thereafter, there shall be elected a mayor, who shall be *ex-officio* president of the board of supervisors, a district attorney, a sheriff, a county clerk, a recorder, a treasurer, an assessor, a coroner, a surveyor, a superintendent of common schools, a harbor master, and in each of the second, fourth, sixth, eighth, tenth, and twelfth wards, one supervisor and one school director, who shall hold their offices for the term of two years from and after the first Monday of December subsequent to their election, and until their successors are elected and qualified."

By the first section of the Act of March 30th, 1872, (Stats. 1871–2, 729) the fourth section of the Act of April 2nd, 1866, just above referred to, was amended so as to read as follows :

"Section 4. At the general election to be held in the year 1873, and at the general election to be held every second year thereafter, there shall be elected an attorney and counselor for said city and county, an auditor, a tax collector, a public administrator, a superintendent of public streets highways an squares, a chief of police, a superintendent of common school and one fire commissioner, and for each of the first, third, fifth, seventh, ninth, and eleventh wards, one supervisor and one school director, who shall respectively hold their offices for the term of two years from and after the first Monday of December next subsequent to their election, and until their successors are elected and qualified; and the present incumbents of the

respective offices named in this act shall hold their offices until their successors are elected and qualified."

It is evident that the effect of this amendment was to fix the election of the officers of the city and county named in it and the former act all on the same day, and in an odd-numbered year. No doubt the object of the act was to bring on the election of all the city and county officers at the general election, which was at that time held on the odd-numbered years. To effect this, the terms of certain officers, (the then incumbents) whose successors would have been elected on the first Wednesday of September, 1872, (when no general election would have been held) were extended by the provisions of the act, and their successors were to be elected in 1873. (See last clause of § 4 of Act of 1866, as amended by Act of 1872.) These officers were then to be elected at the general election to be held in 1873, and at the general election to be held every second year thereafter, by virtue of § 4 as amended; but in case there was no general election in such years, then the election was to be held by virtue of § 3 above cited, of Act of 1866, on the first Wednesday of September of said years. This provision of § 3 was left undisturbed, probably to meet the case which might occur of a change in the law of the State by which the general election might be fixed on the even-numbered years. In the event of such a change, (which was made by an act approved April 16th, 1880, fixing the day of the general election the first Tuesday after the first Monday of November, 1880, and every second year thereafter—see amendment of 1880 to § 1041, Pol. Code) the time of the election of the city and county officers was still to remain as fixed by § 3 of the Act of 1866, on the first Wednesday of September of the odd-numbered years.

The foregoing comprehend all the statutes relating to the matter under discussion to which our attention was called on the argument, or which we have been able to find; and we see nothing in the statute law of the State which fixes the day of the election of the officers referred to on any day in an even-numbered year.

It is further urged upon the Court that the Constitution makes the change, and requires the election of the officers re-

ferred to to be held this year; and it is said this is the effect of § 10 of article xxii of that instrument.   That section is as follows: "In order that future elections in this State shall conform to the requirements of this Constitution, the terms of all officers elected at the first election under the same shall be, respectively, one year shorter than the terms as fixed by law or by this Constitution; and the successors of all such officers shall be elected at the last election before the expiration of the terms, as in this section provided.   The first officers chosen after the adoption of this Constitution shall be elected at the time and in the manner now provided by law.   Judicial officers and the superintendent of public instruction shall be elected at the time and in the manner that State officers are elected."   Now it is argued from this section, that to accomplish the purpose intended by it, which was to have the election on the even-numbered years, and thus to save expense, "the terms of all officers elected at the first election under the same should be, respectively, one year shorter than the terms fixed by law or this Constitution, and the successors of *all such officers* must be elected at the last election before the expiration of the terms, as in this section provided."   That the officers of the City and County of San Francisco were elected under the Constitution of 1879, that their terms were two years, that though they were fixed by law they were shortened one year, and therefore their successors are to be elected at the general election for this year, which is the last election before the expiration of those elected in 1879.   This point was earnestly and forcibly urged, and with much plausibility.   We have given it a full consideration, have reached, as we think, a satisfactory conclusion upon it, the reasons for which we will now proceed to state.

In construing a constitution, as any other document, we must look to every portion of it bearing on the matter, as to which interpretation is required.   The objective of all construction is to arrive at the thought or intention of the parties framing the paper; and to do this we must examine all that is stated in it bearing on the subject under consideration, just as we would ascertain the meaning of what a person says in speaking.   It would be manifestly misleading and unfair to consider a portion of what he said.   Now, the 12th section of article xxii provides

as follows: "This Constitution shall take effect and be in force on and after the fourth day of July, 1879, at twelve o'clock meridian, so far as the same relates to the election of all officers, the commencement of their terms of office, and the meeting of the legislature. In all other respects and for all other purposes, this Constitution shall take effect on the first day of January, 1880, at twelve o'clock meridian." It is provided in § 20 of article xx, as follows: "Elections of the officers provided for by this Constitution, except at the election in the year 1879, shall be held on the even-numbered years next before the expiration of their respective terms. The terms of such officers shall commence on the first Monday after the first day of January next following their election." The officers mentioned in these sections would seem to be the officers whose offices are created by the Constitution itself. All officers in the State and every portion of it, of every grade, derive their powers from the Constitution, in the sense that no office can be created which violates it, as an unconstitutional enactment is no law. But it cannot be controverted that a large class of them derive their right to hold office immediately from the Constitution, while others derive such right mediately through the constitutional action of bodies or tribunals deriving their powers as above. Three classes of these officers of this character are mentioned in the Constitution; viz., legislative, executive, and judicial; and some partaking of all of these characteristics, as railroad commissioners. The legislative powers, under the limitations expressed in the instrument, are vested in the first class, constituting the Senate and Assembly. (§ 1, art. iv.) Members of the Assembly are to be elected in 1879, at the time and in the manner provided by law when the Constitution was adopted. (§ 3, art. iv.) The second election of members of the Assembly after the adoption of the Constitution is required to be held on the first Tuesday after the first Monday in November, 1880. Thereafter they are to be chosen biennially, and their term of office is to be two years, and such election shall be on the day of the year just mentioned, unless otherwise ordered by the legislature. (§ 3, art. iv.) Senators are to be chosen for the term of four years, at the same time and places as members of the Assembly. (§ 4, art. iv.) The sessions of the legislature

are to commence on the first Monday after the first day of January next succeeding the election of its members, and after the election held in 1880, shall be biennial, unless the Governor shall in the interim convene it by proclamation.   (§ 2, art. iv.) As to the. executive officers, the governor (§ 2 art. v), lieutenant-governor (§ 15, art. v), secretary of State, controller, treasurer, attorney-general, and surveyor-general (§ 17, art. v), shall be elected at the same time and places, and in the same manner. The time fixed is when the members of the Assembly are elected.   The terms of office are fixed at four years, and until their successors are elected and qualified, and commence on the first Monday after the first day of January subsequent to their election.   (See section just cited.)

As to judicial officers, it is provided that the Chief Justice and Associate Justices of the Supreme Court shall be elected at the times and places at which the State officers are elected (§ 3, art. vi) ; the judges of the Superior Courts at the general State election (§ 6, art. vi).   In this section there is a special provision that the first election of these judges (as there is of the judges of the Supreme Court in § 3) shall take place at the first general election held after the adoption and ratification of the Constitution.   The terms of these officers are fixed by the sections of article vi referred to, their terms to commence on the same day as the officers before mentioned.   By § 14, article vi, the legislature is authorized to provide for the election of a clerk of the Supreme Court, and shall fix by law his duties and compensation, etc.   The legislature is authorized to determine the number of justices of the peace to be elected in townships, incorporated cities and towns, and cities and counties, and shall fix by law their powers, duties, and responsibilities.   Their term is not fixed by the Constitution ; but they are to be, as regards the first election, as are all other judicial officers, elected at the time and in the manner that State officers are to be elected. (§ 10, art. xxii.)   The above mentioned judicial officers are named among those in which the judicial power is vested. (§ 1, art. vi.)

A superintendent of public instruction shall, at each gubernatorial election after the adoption of the Constitution, be elected.   (§ 12, art. ix.)   It is provided, also, in § 10, article xxii.

that he shall be elected at the time and in the manner that State officers are elected. His term is not expressly fixed by the Constitution. A superintendent of schools for each county shall be elected at each gubernatorial election. (§ 3, art. ix.) The Constitution does not expressly fix his term of office. By the provisions of § 22 of article xii, three railroad commissioners are to be elected at the gubernatorial election, whose term of office is to be four years. The term commences on the same day as that of the governor. Four members of the State board of equalization are required to be elected at the general election in 1879, whose term of office, after those first elected, is to be for four years. (§ 9, art. xiii.) The Constitution does not *expressly* fix the terms of the board who are first elected.

It will thus he seen that, in addition to the special provisions requiring the election of the officers provided for in the Constitution, to be held at the general election in the year 1879, there is a general provision applicable to all of them in § 20 of article xx, requiring that, except as regards the election in 1879, the election of such officers shall be held on the even-numbered years. The reason for the insertion of this last requirement was, no doubt, to make such elections conform to the time of the election of representatives in Congress, and the electors for President and Vice-President, under the Federal laws. A further conformity at once appeared to be necessary. As the State officers were to be elected on the odd-numbered year, 1879, and their terms of office, both by the special provisions of the Constitution and the general provision of § 20, article xx, were to commence on the first Monday after the 1st day of January following their election, and their successors were to be elected on the even-numbered years next before the expiration of the terms of their predecessors in office, as provided in the section just referred to, such election of those successors would occur more than a year before the terms of their predecessors had ended. Now, to make such election conform to this requirement, so that the election of their successors should take place the same year at the end of which the terms closed, it was necessary to shorten the terms of such officers one year, and this was done by § 10 of article xxii. This was intended to bring about such conformity, and effected it in the manner prescribed in the last named

section, by shortening the terms of the officers required to be elected in 1879, one year.

The officers referred to in § 20 of article xx, and those referred to in § 10 of article xxii, are the same officers, and both sections refer to officers mentioned in the previous portion of the Constitution, which were required to be elected at the general election in 1879. Now it is said that § 10 of article xxii refers to officers whose terms are fixed *by law*, as well as those fixed by the Constitution; and that all the terms of the officers are fixed in the Constitution, except that of clerk of the Supreme Court; that some effect is to be given to this requirement as to officers whose terms are fixed by law; and if effect is given to it, it must refer to the officers of this city and county, and of counties the terms of which are fixed by the statute laws of the State. We think that, in assuming that the terms of all the officers referred to, except the clerk of the Supreme Court, are fixed in the Constitution, the counsel for the petitioner has fallen into an error. The terms of the justices of the peace are not mentioned at all. In fact, the terms of these officers were fixed by law, and so fixed that the shortening of the term one year in each case would bring the elections of their successors to conform to the requirement of the Constitution, that such election would fall on the even-numbered years. Viewing the officers of the City and County of San Francisco as county officers, they are not the officers referred to in the section of the Constitution relied on. (§ 20, art. xxii.) Such officers are not the officers " provided for " in the Constitution. They are left to be provided for by the legislature, with the most ample powers to do so. This will be seen by examining a few sections in article xi, in relation to " cities, counties, and towns." Of these sections, § 1 provides that " the several counties, as they now exist, are hereby recognized as legal subdivisions of the State." Section 4 provides that " the legislature shall establish a system of county governments which shall be uniform throughout the State, and by general laws shall provide for township organization," etc. Section 5 is in these words: " The legislature, by general and uniform laws, shall provide for the *election* or *appointment* in the several counties, of boards of supervisors, sheriffs, county clerks, district attorneys, and

such other county, township, and municipal officers as public convenience·may require, and shall prescribe their duties and fix their terms of office. It shall regulate the compensation of all such officers, in proportion to their duties, and for this purpose may classify the counties by population; and it shall provide for the strict accountability of county and township officers for all fees which may be collected by them, and for all public and municipal moneys which may be paid to them, or officially come into their possession."

From this, it is apparent that the entire control of the matters relating to county officers is vested in the legislature, with the restriction that its enactments in relation to them shall be general and uniform. It can provide for the *election* or *appointment* of the officers named, in the several counties, and of such other county, township, or municipal officers as public convenience may require; and may prescribe their duties, fix their terms of office, and regulate their compensation. Such officers are to be provided for by the legislature, in the exercise of the powers vested by the sections referred to. It can fix their terms at one, or two, or three, or four years. It may be added here, that the legislature did attempt to act on this subject, and fix the elections of such officers on the even-numbered years, but their action was declared void in *Leonard* v. *January*, *ante*, 3.

Treating the officers referred to in the petition as city officers or city and county officers, the provisions of §§ 7 and 8 of article xi show that they are not affected by the provisions of the Constitution contained in § 20, article xx, and § 10, article xxii. This matter is left to the legislature to be regulated by general laws, or the local authorities acting under general laws, or it may be in the case of the City and County of San Francisco, by the action of the corporation under § 8 of this article xi. (See *Desmond* v. *Dunn*, 55 Cal. 242.)

There is another view which shows the section referred to does not embrace the officers in question. The terms of such officers chosen at the first election referred to in the Constitution are to commence on the first Monday after the 1st day of January, 1880. That is not the case with the officers in question, as was held in the case of the county clerk, one of them.

(See *In re Stuart*, 53 Cal. 745.) We have no doubt of the ruling in that case; and, by a parity of reasoning, the same conclusion must be reached as to the other officers of the city and county. The decision in Stuart's case applies with all its force to each and every one of them. The terms of those officers commenced, as Stuart's did, on the first Monday in December following the election. By the general law, all county and township officers, except judicial officers and assessors, are to be elected at the general election in 1873, and every two years thereafter. (Pol. Code, § 4109.) The term of supervisors is three years. (Pol. Code, § 4024.) The counties are · arranged in three classes. The first class has seven, the second five, and the third three supervisors. (Pol. Code, § 4022.) In counties of the third class, one supervisor is to be elected each year at the general election when it occurs, and on the corresponding day of the alternate year, when no general election occurs. In the counties of the first and second classes, a number of supervisors, as nearly equal as may be, to be determined by the board, are elected every year at the same times as specified herein for counties of the third class. (Pol. Code, § 4111.)

There are special laws for some of the counties, which were referred to in the argument. If the terms of these officers are shortened one year, the election of their successors must occur in the odd-numbered years. Having been elected in 1879, shortening the term of such officers one year, the election of their successors must be held in 1881 for it must be recollected that in the same sentence of § 10, article xxii, referred to and relied on by plaintiff, it is provided that the election of the successors of the officers referred to in it must be held at the last election before the expiration of the terms shortened by one year. If, then, they cannot be elected in 1881, they would have to be chosen more than a year before the terms of their predecessors end. This certainly was not intended. It would be a .curious problem to ascertain when the successor to an officer whose term is one year, when shortened by one year, is to be elected. Carrying out the view urged upon us, he would have to be elected at the same time with his predecessor, and this would be to introduce a system of rotation in office novel and unprecedented.

The foregoing considerations convince us that the provisions of the section relied on (§ 10, art. xxii) do not refer to the officers of the City and County of San Francisco. The police judge is one of such officers. (*Uridias* v. *Morrill*, 22 Cal. 474; *People* v. *Provines*, 34 id. 520.)

We have fully considered the history of the action of the convention in relation to the section just referred to, as it was disclosed to us upon the argument. The vote of rejection on the proposition to exclude county officers from this section may, and doubtless was had on the ground that it did not refer at all to such officers, that it did not include them. As to the address to the voters of the State, adopted by the convention, its reference to the effect of the Constitution in diminishing the number of the elections to be held, and thus saving expense, many who voted for it may have supposed that this would be brought about by the action of the legislature, in causing the election of county officers to be held on the even-numbered years, at the time of the general election in those years. The indirect as well as the direct effect of the Constitution may have been referred to. If we are correctly informed of the circumstances under which this address was adopted, it is entitled to but little weight in construing the constitution, especially in such a case as this, where a full examination of the provisions of the instrument leave no doubt as to its meaning. We are convinced that the conclusion above stated is correct; and acting upon this conviction, our judgment is, that the writ asked for must be denied.

SHARPSTEIN, J., concurred.

ROSS, J., concurring:

I concur in the judgment, and, in the main, in the opinion of Mr. Justice THORNTON. The only section of the Constitution which, in terms, requires any elections to be held on the even-numbered years is § 20 of article xx, which is in these words: "Elections of the officers provided for by this Constitution, except at the election in the year 1879, shall be held on the even-numbered years next before the expiration of their respective terms. The terms of such officers shall commence on the first

Monday after the 1st day of January next following their election." The Constitution does not say that the election of *all* officers shall be held on the even-numbered years, with the exception stated, namely, the election of 1879, but only that the election of the officers "*provided for by this Constitution*" shall be held on such even-numbered years.

Who are the officers referred to as being officers whose election is "provided for by this Constitution"? In *the Stuart case*, 53 Cal. 745, that question was answered by the unanimous opinion of the late Supreme Court, in these words: "We think that these are not municipal, county, or township officers chosen in 1879, but State officers, such as the governor and the other officers who constitute the executive department of the State government. These are officers whose election is absolutely provided for by the Constitution itself. But as to the terms of municipal, county, and township officers, another and distinct and utterly inconsistent provision is found in the new Constitution. We refer to § 5 of article xi." That section is as follows:

"The legislature, by general and uniform laws, shall provide for the election or appointment, in the several counties, of boards of supervisors, sheriffs, county clerks, district attorneys, and such other county, township, and municipal officers as public convenience may require; and shall prescribe their duties and fix their terms of office. It shall regulate the compensation of all such officers in proportion to duties, and for this purpose may classify the counties by population; and it shall provide for the strict accountability of county and township officers for all fees which may be collected by them, and for all public and municipal moneys which may be paid them, or officially come into their possession."

By this section the Constitution has, in express terms, committed to the *legislature* the power to provide by general and uniform laws for the *election* or *appointment*, in the several counties, of boards of supervisors, sheriffs, county clerks, district attorneys, and such other county, township, and municipal officers as public convenience may require; and has also committed to the legislature the power to *fix their terms of office*. The question whether the county, township, and municipal of-

ficers should be elected at all was left to the determination of the legislature; for it is expressly empowered to provide for their _election_ or _appointment_, and in either event to fix their terms of office. The exercise of this power by the legislature is entirely consistant with § 20 of article xx, as construed in _In re Stuart, supra,_ and in the opinion of Mr. Justice THORNTON, but would be utterly irreconcilable with that section if, instead of its own unambiguous language—" elections of the officers _provided for by this Constitution,_" etc.—it be made by construction to read: " Elections of _all_ officers, _State, county, township,_ and _municipal,_ except at the election in the year 1879, shall be held on the even-numbered years," etc. To adopt the view contended for by the petitioner, the Court would in effect be obliged to make this radical change in the language of the Constitution. Not only have we no power to do this, but the result would be to bring about the conflict already pointed out. On the other hand, by reading § 20 of article xx, according to the natural import of its own language, the various provisions of the Constitution are consistent and harmonious, and it is our duty so to construe it. Section 10, article xxii (of the Schedule), obviously refers to the officers mentioned in § 20, article xx; the purpose being, as the section itself declares, to make the future elections in this State conform to the requirements of the Constitution. If the words " all officers," in § 10 of the Schedule, _mean,_ as is claimed by the petitioner, all State, county, township, and municipal officers, then it must be conceded that we can read it as if the names of the various officers were inserted in the place of the words " _all officers._" Section 10 of the Schedule would then read in this way : " In order that future elections of this State shall conform to the requirements of this Constitution, the terms of governor, lieutenant-governor, etc., sheriffs, county clerks, district attorneys, tax collectors, county recorders, boards of supervisors, etc., elected at the first election under the same shall be respectively one year shorter than the terms as fixed by law or by this Constitution; and the successors of all such officers shall be elected at the last election before the expiration of the terms as in this section provided," etc. What then becomes of § 5 of article xi ? " The legislature, by general and uniform laws, shall provide for the election or ap-

pointment, in the several counties, of boards of supervisors, sheriffs, county clerks, district attorneys, and such other county, township, and municipal officers as public convenience may require; and shall prescribe their duties and fix their terms of office."

Suppose the last legislature had provided that there should no longer be any county recorders or tax collectors, or that all county officers should be thereafter *appointed*, and that none of them should be elected, as it clearly had the power to do under § 5 of article xi, how, if § 10 of the Schedule refers to county, township, and municipal officers, could such action' on the part of the legislature be reconciled with that part of § 10 of the Schedule which declares that "*the successors of all such officers (as are elected in* 1879) *shall be elected at the last election before the expiration of the terms, as in this section provided*"? It is plain, that, by construing § 10 of the Schedule as applicable to county, township, and municipal officers, there would arise an irreconcilable conflict between it and § 5 of article xi; whereas, by construing it as applicable to the officers mentioned in § 20 of article xx, which, as already said, is the only section in the Constitution requiring any elections to be held on the even-numbered years, there is no conflict whatever. It may have been, and probably was, contemplated by the framers of the Constitution, that when the legislature should provide for the election of county, township, and municipal officers, it would require such elections to be held upon the even-numbered years. Whether the legislature, when it shall act, *must* do so, is a question not before us in this case. As yet the legislature has not acted at all.

MORRISON, C. J., concurred in the judgment, and in the opinion of Mr. Justice Ross.

McKINSTRY, J., concurring:

I concur in the judgment, and, in the main, in the views expressed by Mr. Justice THORNTON and Mr. Justice Ross. I do not, however, assent to the proposition that the legislature, under the present Constitution, has power to deprive the people of a county or township of the choice of every county or town-

ship officer. Such a construction would go far to destroy many of the provisions of the instrument evidently intended to secure local self-government, with reference to many matters of great concern, to the people of the different territorial subdivisions of the State. In my opinion, full force and effect can be given to § 5 of article xi, by construing it as authorizing a system by which some of the county and township officers shall be elected, and the others appointed by those elected. Thus, it would seem a reasonable and proper mode of carrying into effect the purpose and design of the Constitution (i. e., that the people of each locality shall be assured the right of self-government, with reference to matters of special interest to them), to provide that *supervisors*—on whom is usually conferred legislative and quasi-legislative power in the counties—should be elected, and that *they* should appoint certain other county officers ; and so, that the boards of township trustees—or boards by any other name—who may be empowered to make " prudential rules and regulations " operative within the township—*themselves elected* —should appoint the township officers, whose duties are to be ministerial only. The foregoing does not, in my view, materially weaken the argument in favor of the conclusion reached by a majority of the Court—a conclusion to which I assent.

MCKEE, J., concurring:

I think that all State and county officers who were elected under the Constitution at the first election held under it, in 1879, hold their offices subject to the provisions of § 20, article xx, and of § 10, article xxii, of the Constitution; and that such terms of office as were fixed by the Constitution, or by the law as it existed at the time of the first election, were made one year shorter, for the purpose of making all officers elective, in the future, at elections to be held on even-numbered years. To give to these sections of the Constitution any other construction, will, in my judgment, disturb the harmony of the system of elections intended to be established by the Constitution; and instead of shortening one year the terms of all officers elected in 1879, as was expressly intended, an opposite result will be attained.

The provisions referred to apply to all elective officers, ex-

cept municipal. Municipal elections are regulated by the respective charters of the municipalities, under which the municipalities must continue to work until changed by the legislature. By § 5, article xi, of the Constitution, power has been conferred upon the legislature to bring the terms of officers and the election of all officers—county, township, and municipal—into harmony with the constitutional requirements of articles xx and xxii. But, as this Court has decided, the legislature has failed to exercise the power conferred upon it, by the passage of a general and uniform law, fixing the terms of officers, and providing for the election of all such officers at the same election, throughout the towns, cities, and counties of the State; therefore the election of municipal officers in the City and County of San Francisco is still regulated by the provisions of the Consolidation Act; and, as it appears by the petition that the board of election commissioners have refused only to order the printing of tally lists necessary for an election of *municipal* officers, I concur in the judgment that the application for a writ of mandamus should be denied.

MYRICK, J., dissenting:

Although there is ambiguity in the provisions of the Constitution relating to elections, and some of the officers created and authorized by it, yet there is enough in it from which to ascertain the will of the people in adopting it. It is evident that the people did not deem it wise to continue the system, theretofore prevailing, of frequent elections. It is evident, too, that they intended that the new system should be *at once* entered upon ; that the old system should then and there stop; laws then in force being retained only as supplying machinery until the legislature should enact perfectly fitting laws. By § 12, article xxii, the Constitution took effect July 4th, 1879, at twelve o'clock M., so far as the same relates to the *election of all officers*, the *commencement of their terms of office*, and the meeting of the legislature.

Section 20, article xx, reads : "Elections of the officers provided for by this Constitution, except at the election in the year eighteen hundred and seventy-nine, shall be held on the even-numbered years next before the expiration of their respective

terms.    The terms of such officers shall commence on the first Monday after the first day of January next following their election."    Section 10, article xxii, provides that, " in order that future elections in this State shall conform to the requirements of this Constitution, the terms of all officers elected at the first election under the same shall be, respectively, one year shorter than the terms as fixed by law or by this Constitution ; and the successors of all such officers shall be elected at the last election before the expiration of the terms as in this section provided. The first officers chosen after the adoption of this Constitution shall be elected at the time and in the manner now provided by law.    Judicial officers and the superintendent of public instruction shall be elected at the time and in the manner that State officers are elected."

Thus it is apparent, that *all elections for all officers* in this State, from and after July 4th, 1879, were and are to be held as follows : The first set of officers, at the general election in 1879, and thereafter in the even-numbered years.    It is also apparent, that the Constitution undertook to and did provide for a uniform system for the commencement of the terms of all officers ; viz., on the first Monday after the first day of January next following their election.    When the Constitution says " future elections," " elections of the officers provided for by this Constitution," " all officers," and " the successors of all such officers," I think that the people, in adopting the Constitution, intended to express, and did express, the view above indicated.    Now, let us see what officers are provided for by the Constitution ; and it will be observed, in that regard, that the language is, " elections of officers provided for," not elections provided for.    The following officers are expressly named : Members of Assembly, who " shall be elected in the year 1879, and on the first Tuesday after the first Monday in November, 1880, and every two years thereafter " ; senators, governor and lieutenant-governor, secretary of State, controller, treasurer, attorney-general, and surveyor-general; justices of the Supreme Court, Superior judges, and justices of the peace ; reporter of the decisions of the Supreme Court; superintendent of public instruction and county superintendent of schools; railroad commissioners ; State board of equalization ; clerk of the Supreme Court; boards of super-

visors, sheriffs, county clerks, district attorneys, and Superior Court commissioners.   In addition to the foregoing county officers, the legislature is directed to provide for the election or appointment of such other county, township, and municipal officers as public convenience may require.

At first view, it would seem that the provisions of the Constitution relating to the clerk of the Supreme Court, and county, township, and municipal officers, reading as they do, that the legislature shall provide, etc., referred to subsequent action of the legislature.   There would be much force in that suggestion, were it not for the fact, that laws were already in existence relating to those officers, and that by the instrument itself such laws remain in force where consistent with the instrument; and therefore, until action by the legislature, the former statutes continue, except as controlled or modified by the Constitution.

I think that all of the officers designated in the Constitution, as well as those which the legislature may designate or establish, are " officers provided for by this Constitution," within the meaning of article xx, § 20, and that from and after the year 1879 no officer to be elected by the people can be elected in any but an even-numbered year.   I think that the terms of all officers elected in 1879 were shortened one year, in order to conform to the new system ; and that if there should be (and it has been suggested that there are) some local officers in some counties who were elected in 1879 for three years, such officers may be exceptions to the general rule as to shortening one year, and they·hold the full term to 1882, so as to preserve the harmony of having the elections of all officers occur on the even-numbered years, and the terms of office commence on the first Monday after the first day of January next following.

It has been suggested, that, as to the City and County of San Francisco, the Consolidation Act will prevail over the general laws relating to the State at large.   I think that, in regard to the matter now under consideration, the Consolidation Act, as well as all other special laws and all general laws, will have to yield precedence to the provisions of the Constitution, in so far as there is conflict ; and that every county in the State must fall in with the general system therein established.

The prevailing idea of the Constitution, concerning times of

VOL. LVI.—8.

elections, seems to be that members of the Assembly are to be elected on the first Tuesday after the first Monday in November, in each even-numbered year, and that every other officer elected is to be elected at the same time, and that all minor matters must yield to that.

As to county, township, and municipal officers, except justices of the peace and superintendents of schools, the legislature has the power to provide for their appointment, instead of election, and may fix their terms; viz., whether two years or four years, except as to superintendents of schools; but cannot make the terms commence on any other day than the first Monday after the first day of January next following the election; and in no case can the term extend beyond four years.   (Art. xx, § 16.)

I think that, from this view, would follow, not only harmony in the various provisions of the Constitution, but uniformity of action under it.   From the opposite view, the legislature may fix as many elections as there may be county, township, or municipal officers to elect; and may fix the terms at any period of duration, not exceeding four years.