[S. F. No. 9792. In Bank.—October 7, 1921.]

PAUL COULTER, Appellant, v. C. A. POOL, as Auditor, etc., et al., Respondents.

[1] STATUTES—COUNTY ENGINEER ACT—CREATION OF PUBLIC OFFICE.— The County Engineer Act (Stats. 1919, pp. 1290, 1295) contemplates the creation of a county office and does, in fact, provide for something more than a mere employment by the board of supervisors of a person to be known as the county engineer.

[2] ID.—STATUTORY CONSTRUCTION.—Cardinal rules of statutory construction require an interpretation of a statute which will give effect to the legislative intent, if consistent with the real object and purpose of the statute.

[3] ID.—DECLARATION OF LEGISLATURE — EFFECT OF. — A legislative declaration, whether contained in the title or body of a statute, that the statute was intended to promote a certain purpose is not conclusive on the courts and they may and must inquire into the real, as distinguished from the ostensible, purpose of the statute, and determine the fact whether, after all has been said and done by the legislature, the statute, in its scope and effect, departs from the declared legislative design and contravenes the fundamental and supreme law of the state.

[4] ID.—PUBLIC OFFICE — CHARACTER OF — HOW DETERMINED.—The definition and application of the words "public office" depend not upon what the particular office in question may be called, nor upon what a statute may call it, but upon the power granted and wielded, the duties and functions performed, and other circumstances which manifest the true character of the position and make and mark it a public office, irrespective of its formal designation.

[5] ID.—DEFINITION.—A public office is ordinarily and generally defined to be the right, authority, and duty, created and conferred by law, the tenure of which is not transient, occasional, or inci-

dental, by which for a given period an individual is invested with power to perform a public function for the benefit of the public.

[6] ID.—NATURE OF PUBLIC OFFICE.—A public officer is a public agent and as such acts only on behalf of his principal, the public, whose sanction is generally considered as necessary to give the act performed by the officer the authority and power of a public act or law. The most general characteristic of a public officer, which distinguishes him from a mere employee, is that a public duty is delegated and entrusted to him, as agent, the performance of which is an exercise of a part of the governmental functions of the particular political unit for which he, as agent, is acting. Their characteristics are a fixed tenure of position, the exaction of a public oath of office, and perhaps, an official bond, the liability to be called to account as a public offender for misfeasance or nonfeasance in office, and the payment of his salary from the general county treasury.

[7] ID.—COUNTY OFFICER—DEFINITION.—A county officer is a public officer and may be specifically defined to be one who fills a position usually provided for in the organization of counties and county governments, and is selected by the political subdivision of the state called the "county" to represent that governmental unit, continuously and as part of the regular and permanent administration of public power, in carrying out certain acts with the performance of which it is charged in behalf of the public.

[8] ID.—COUNTY ENGINEER ACT—FAILURE TO SPECIFY COMPENSATION. The County Engineer Act is practically inoperative because it specifies no compensation for the office, and any ordinance of a board of supervisors attempting to fix the salary of a person appointed to the position of county engineer is void to that extent, because the constitution imposes upon the legislature, exclusively, the duty of regulating the compensation of all county officers, unless a county has adopted a charter in accordance with the provisions of sections 7½ or 7½a, article XI, of the constitution, or there is some other express constitutional exception.

[9] ID.—COUNTY OFFICERS—FIXING SALARY—DELEGATION OF POWER—CONSTITUTIONAL LAW.—The state legislature cannot directly delegate to the board of supervisors of the various counties the power of fixing the compensation of a county officer.

[10] ID.—UNIFORM SYSTEM OF COUNTY GOVERNMENTS — CONSTITUTIONAL LAW.—The constitution contemplates and commands that the system of county governments shall be uniform throughout the state, except in those special instances where the constitution itself sanctions a departure from uniformity, such, for instance, as in the case of counties or consolidated cities and counties which adopt charters in accordance with the provisions of sections 7½ and 7½a of the constitution.

[11] ID.—DEFINITION OF "SYSTEM."—The word "system," as employed
in the constitution, means an organized plan or scheme in keeping
with which the constituent parts thereof are rendered similar and
are connected and combined into one complete, harmonious whole,
and it necessarily imports both a unity of purpose and entirety
of operation.

[12] ID.—COUNTY ENGINEER ACT — UNCONSTITUTIONALITY OF.—Inas-
much as the County Engineer Act provides for a county office,
involving the exercise of political functions, it violates the con-
stitutional requirement that the system of county governments
prescribed by the legislature shall be uniform throughout the state,
by reason of the fact that it is not mandatory in its operations,
but it is optional with each county whether or not the office pro-
vided for by the act shall be established therein.

APPEAL from a judgment of the Superior Court of
Sonoma County. Emmett Seawell, Judge. Reversed.

The facts are stated in the opinion of the court.

W. F. Cowan and R. M. F. Soto for Appellant.

G. W. Hoyle for Respondent.

LENNON, J.—In this proceeding the plaintiff sought, and
was denied, *mandamus* to compel the defendants, respectively
the auditor and the treasurer of the county of Sonoma, to
audit and pay the claim of plaintiff presented against said
county in the sum of $39.24 for labor alleged to have been
performed by the plaintiff upon certain of said county's
highways.

The claim in controversy is founded primarily upon the
admitted fact that plaintiff performed labor upon said high-
ways under and by virtue of the direction and authority of
one of the supervisors of said county elected from and rep-
resenting the supervisorial district in which the labor was
performed and who, by virtue of his office, was road com-
missioner for said district and, as such commissioner, was
given supervision of the highways in his district. (Pol.
Code, secs. 2641, 2645.) The labor which is the basis of the
claim in controversy was performed on July 26, 1919, sub-
sequent to the appointment by the board of supervisors of
a county engineer, made pursuant to the provisions of an
act entitled "An act providing for a county engineer for

each county in the state, . . . his appointment, manner of removal, qualifications, compensation and duties; transferring to such engineer certain powers, functions and duties heretofore vested in and performed by the county surveyor and members of the board of supervisors; . . . to provide for abolishing the office of county surveyor and for the fixing and levying of taxes for road purposes.'' (Stats. 1919, p. 1290.)   Section 13 of this act provides that it shall be known and designated as ''the County Engineer Act,'' and it will be hereinafter referred to by that title.   (Stats. 1919, pp. 1290, 1295.)   In keeping with the provisions of this act, the board of supervisors, when appointing the county engineer for a term of four years, fixed his salary at the sum of $350 per month, and the number and compensation of his assistants.   Said labor was performed by plaintiff without, and never has had, the authority, inspection, and approval of said county engineer as required by the provisions of subdivision b of section 5 of said act.   The claim in question was, however, approved and allowed by the board of supervisors as a legal charge against the county, apparently upon the theory that, inasmuch as an ordinance, passed subsequent to the ordinance appointing the county engineer, with apparent intent to do so, excluded the supervisorial district in which the labor involved was performed from the scope and operation of the ordinance appointing the engineer, it thereby, in effect, left the supervisor of that district as the *ex-officio* road commissioner thereof in control of the work to be done on the highway therein to the exclusion of the authority and direction of the county engineer. The writ seeking an order directing the auditing and payment of the claim thus allowed was denied by the court below upon the theory that the County Engineer Act, having been adopted by the board of supervisors of Sonoma County, applied throughout that county; that the board of supervisors had no authority to except one district of that county from the operation of the act, and that plaintiff's claim was, therefore, void on its face because the work performed by plaintiff was not performed under the provisions of the County Engineer Act.   The proceeding in *mandamus* is now here upon appeal of the plaintiff.

We shall concern ourselves only with the constitutionality of the act, for if it be held, as we think it must, to be un-

constitutional, then it does not invalidate the plaintiff's claim and there is no need to discuss and decide the several remaining questions involved in the appeal.

[1] At the outset we are satisfied that the act in question contemplates the creation of a county office and does, in fact, provide for something more than a mere employment by the board of supervisors of a person to be known as the county engineer. And we are convinced that this is so despite the verbiage of the act, industriously employed, which, among other things, declares that the county engineer appointed by the board of supervisors "shall be deemed an employee and not a county officer . . . subject to the control and supervision of the board of supervisors."

[2] We are not unmindful of the cardinal rules of statutory construction which require an interpretation of a statute which will give effect to the legislative intent which, if consistent with the real object and purpose of the statute, must be adopted, and, doubtless, the express legislative declaration found in section 1 of the act purporting to designate the official character of the county engineer and specifying the category in which, when appointed, he and his duties must be considered and treated, tends in some degree to show the legislative intent to provide that the county engineer was to be a mere employee of the board of supervisors and not a county officer who was to be part and parcel of that uniform system of county government contemplated and commanded by the constitution. (Const., art. XI, sec. 4.) While ordinarily it is the rule that, when the law-making power distinctly states its design in the enactment of a particular statute, no room is left for construction, nevertheless, as the district court of appeal well said during its discussion of this phase of the case, "The label placed by the legislature upon its work cannot be permitted to give it a meaning not fairly contemplated within its terms." [3] In other words, a legislative declaration, whether contained in the title or in the body of a statute, that the statute was intended to promote a certain purpose is not conclusive on the courts, and they may and must inquire into the real, as distinguished from the ostensible, purpose of the statute, and determine the fact whether, after all has been said and done by the legislature, the statute, in its scope and effect, departs from the declared legislative design and contravenes

the. fundamental and supreme law of the state. (*Matter of Jacobs,* 98 N. Y. 98, 110, [50 Am. Rep. 636]; *State* v. *Kedmon,* 134 Wis. 89, 107, [126 Am. St. Rep. 1003, 15 Ann. Cas. 408, 14 L. R. A. (N. S.) 229, 114 N. W. 137]; *Mugler* v. *Kansas,* 123 U. S. 623, [31 L. Ed. 205, 8 Sup. Ct. Rep. 273, see, also, Rose's U. S. Notes].) This being so, it cannot be rightfully held that, standing alone, the legislative declaration, in the instant case, compels the conclusion without more ado that the act in question did no more than provide for the mere employment of a county engineer and did not, in truth and in fact, attempt to create a county officer to be known as the county engineer. A proper construction of the act requires that due regard be given to the real object of the act. (*People* v.. *Dana,* 22 Cal. 11; *Genilla* v. *Hanley,* 6 Cal. App. 614, [92 Pac. 752].) This may, we think, be readily ascertained, despite the legislative declaration to the contrary, by a consideration of the requirements of the act as gathered from the context of the act in its entirety.

Looking, then, to the context of the act in its entirety for the purpose of ascertaining its real, as distinguished from its ostensible, purpose, we are first brought to a consideration of the question of· what distinguishes a public office from a mere employment. The words "public office" are used in so many senses that it is hardly possible to undertake a precise definition of the meaning and purpose of the phrase which will adequately and effectively cover every situation. It is far less difficult to conceive and comprehend the requirements which characterize a public office than it is to formulate a definition thereof which will have universal application and be entirely free from fault. [4] Its definition · and application depend not upon what the particular office in question may be called, nor upon what a statute may call it, but upon the power granted and wielded, the duties and functions performed and other circumstances which manifest the true character of the position and make and mark it a public office, irrespective of its formal designation. (*Knox* v. *Los Angeles County,* 58 Cal. 59; Mechem on Public Offices, sec. 4; *Hartigan* v. *Board,* 49 W. Va. 14, [38 S. E. 698].) [5] A public office is ordinarily and generally defined to be the right, authority, and duty, created and conferred by law, the tenure of which is not tran-

sient, occasional, or incidental, by which for a given period an individual is invested with power to perform a public function for the benefit of the public. (*State* v. *Jennings,* 57 Ohio St. 415, [63 Am. St. Rep. 723, 49 N. E. 404].) **[6]** A public officer is a public agent and as such acts only on behalf of his principal, the public, whose sanction is generally considered as necessary to give the act performed by the officer the authority and power of a public act or law. The most general characteristic of a public officer, which distinguishes him from a mere employee, is that a public duty is delegated and entrusted to him, as agent, the performance of which is an exercise of a part of the governmental functions of the particular political unit for which he, as agent, is acting. There are other incidents which ordinarily distinguish a public officer, such, for instance, as a fixed tenure of position, the exaction of a public oath of office and, perhaps, an official bond, the liability to be called to account as a public offender for misfeasance or nonfeasance in office and the payment of his salary from the general county treasury. (*United States* v. *Hartwell,* 6 Wall. 385, [18 L. Ed. 830, see, also, Rose's U. S. Notes] ; *United States* v. *Germaine,* 99 U. S. 508, 511, [25 L. Ed. 482] ; *People* v. *Langdon,* 40 Mich. 673; *State* v. *Jennings, supra; Knox* v. *Los Angeles County, supra.*) **[7]** As a matter of course, in keeping with these definitions, a *county* officer is a *public* officer and may be specifically defined to be one who fills a position usually provided for in the organization of counties and county governments and is selected by the political subdivision of the state called the "county" to represent that governmental unit, continuously and as part of the regular and permanent administration of public power, in carrying out certain acts with the performance of which it is charged in behalf of the public. (*Sheboygan Co.* v. *Parker,* 70 U. S. 93, [18 L. Ed. 33] ; *State* v. *Samuelson,* 131 Wis. 499, [111 N. W. 712] ; *State* v. *Higginbotham,* 84 Ark. 537, [106 S. W. 484].)

Measuring the provisions of the act hereinabove referred to by the authorities just cited, it seems evident, beyond argument, that the so-called "employee" provided for in the statute in question is, in fact, a public and a county officer. The act specifies that the tenure of the position of county engineer shall be a term of four years from the date of his

"appointment," providing for removal only in the event of inefficiency, malfeasance, or misconduct in office and then upon written charges filed with the board of supervisors and after a hearing of the charges by said board, and, if found guilty, the board must forthwith remove him from "office" and shall immediately appoint his "successor" in the manner provided in the act. The act also requires that "Prior to entering upon the duties of his employment the county engineer shall file with the county clerk the *oath of office as prescribed for the county officers* and a bond conditioned upon the faithful performance of his duties, with sufficient sureties approved by a judge of the superior court, in the sum of five thousand dollars." (Italics ours.) The salary, which is to be fixed by the board of supervisors, "shall be paid monthly out of the county treasury of the county in which he is appointed and in the same manner as county officers. . . . *provided, however,* that the compensation of the county engineer in any county shall not be less than the compensation received by the county surveyor of that county at the time said county engineer is first appointed." With respect to duties, it is provided that, among other things, "The county engineer shall be *ex-officio* road commissioner of and for each and every road district of his county and, subject to the control and supervision of the board of supervisors as herein provided, shall . . . make, or cause to be made, all surveys, maps, plans, specifications and estimates necessary or required for the construction, improvement, maintenance and repair of the county roads, highways and bridges, and shall, from and after the first Monday in September, 1919, have and exercise all the powers and duties, and perform all the functions which are now by law conferred or imposed upon county surveyors. . . . " The act further provides that the county engineer "may also hold and perform the duties of the office of county surveyor, but in all such cases no salary or other compensation shall be paid to him as county surveyor," and that he shall, at regular monthly meetings of the board, make a report to the board containing "the recommendation of acceptance or rejection of any public work completed, and all official announcements or statements which the engineer is required to make to the board" and "submit to the board of supervisors a certificate over his own signature

and official seal to the effect that such work by the contract-
ors thereof has been completed in accordance with the speci-
fications thereof and recommending its acceptance.'' The
act in terms provides that, upon the appointment of the
county engineer, the county office of county surveyor shall,
in certain specified contingencies, be deemed abolished;
nevertheless, as is evidenced by some of the provisions above
set forth, the office and duties of the county surveyor are,
in effect, by the act in question, merged into the office and
duties of the county engineer. The county surveyor, under
the general law in force throughout the state, is a county
officer (Pol. Code, sec. 4013), and as such is required to do
certain designated county work, not specially mentioned
in the act in question, pertaining to the governmental func-
tions of the county. (Pol. Code, sec. 4214 et seq.) The
legislature, therefore, attempted to transfer the burden of
the duties of the county surveyor to the so-called county
engineer, in conjunction with the added and different duties
imposed upon him by the act in question. That this is so
is further evidenced by an amendment to the County Engi-
neer Act, in 1921, by which a provision was added to
the effect that, upon the petition of a certain percentage of
qualified electors of the county, the board of supervisors
in any county which shall have adopted the provisions of
the act ''shall discontinue such office of county engineer
by ordinance declaring their intention so to do and in such
ordinance the board shall provide that the person holding
the office of county engineer at the time the ordinance be-
comes effective shall be and become the county surveyor of
such county until the next ensuing general election . . . ''
(Stats. 1921, p. 934.)

[8] That the position of county engineer is in fact a county
office is apparent, in view of the authorities previously cited,
from the provisions of the act above quoted and referred
to, namely, the provision for trial and removal of the county
engineer in the event of misfeasance or nonfeasance in
office, the fixing of the tenure of office, the requirement of
a bond and the taking of the oath prescribed for county
officers, payment of salary from the general county treas-
ury, the political and governmental nature of his duties
and the relation between the position of county engineer
and the office of county surveyor. ''Clearly, it was a county

office." (*Reed* v. *Hammond*, 18 Cal. App. 442, [123 Pac. 346].) This being so, it may be stated, in passing, that it follows that the County Engineer Act is practically inoperative for the reason that the act itself specifies no compensation for the office, and any ordinance of a board of supervisors attempting to fix the salary of a person appointed to the position of county engineer is void to that extent for the reason that the constitution imposes upon the legislature, exclusively, the duty of regulating the compensation of all county officers, unless a county has adopted a charter in accordance with the provisions of sections 7½ or 7½a of article XI of the constitution, or there is some other express constitutional exception. [9] The state legislature cannot directly delegate to the boards of supervisors of the various counties the power of fixing the compensation of a county officer. (Const., art. XI, sec. 5; *Dougherty* v. *Austin*, 94 Cal. 601, [16 L. R. A. 166, 28 Pac. 834, 29 Pac. 1092].)

Concluding, as we do and must, that the position of "county engineer" which the legislature attempted to provide for by the act under consideration is in truth and in fact a county office, we are then confronted with the question of whether or not the act, if permitted to become operative, is in keeping with and does not violate the mandatory provision of the constitution, which requires that "The Legislature shall establish a system of county governments which shall be uniform throughout the State . . . "· (Const., art. XI, sec. 4.)

We may concede, for the purpose of discussion, that the rule prohibiting the delegation of legislative powers by a state legislature does not necessarily prohibit a conditional statute, the taking effect of which, in each locality, may be made to depend upon such subsequent event as its approval by the electors of that locality. Likewise, it may be conceded that the act in question may be said to be a general and uniform law because the general provisions thereof are applicable alike to every county in the state. [10] The fact remains, however, that the constitution contemplates and commands that *the system of county governments shall be uniform throughout the state*, except in those special instances where the constitution itself sanctions a departure from uniformity, such, for instance, as in the case of counties or consolidated cities and counties which

adopt charters in accordance with the provisions of sections $7\frac{1}{2}$ and $7\frac{1}{2}$a of the constitution. There is no section of the constitution which specially excepts the political functions dealt with by the act in question from the requirement that the general scheme of county governments provided for by the legislature must be uniform throughout the state. Therefore, if the County Engineer Act will, in its operation, necessarily tend to interfere with this uniformity, it is unconstitutional and void.

Section 1 of the act provides that "The board of supervisors of any county at their option may appoint, and upon petition therefor signed by qualified electors of the county equaling in number not less than twenty-five per cent of the total vote cast in the county for governor at the last preceding election at which a governor was elected, they must appoint a competent civil engineer . . . as county engineer." Section 11 provides that, if the provisions of the act are adopted in a county by the appointment of a county engineer, the office of the county surveyor shall be abolished either upon the date upon which the appointment is made and accepted if the person who holds the office of county surveyor is the one appointed county engineer, or, in other cases, upon the expiration of the term of the person who holds the office of county surveyor at the time the appointment of county engineer is made. By the 1921 amendment, previously mentioned, the office of county engineer may be abolished and that of county surveyor reinstated, upon the petition of a certain percentage of electors. It is evident, therefore, that the act is not mandatory in its operation. To the contrary, it is provided in the act that the question as to whether its provisions shall become operative in any particular county or whether that county shall continue under the provisions of the general law on the subject heretofore in force, is a matter to be determined, in the last analysis, solely by a percentage of the electors of that county. This being so, the act by its express terms renders possible, and probable, a situation where, in one or more of the counties of the state, the duties of surveying and fixing the boundaries of the public lands and roads, etc., would be performed by the county surveyor, an officer elected by the people of the respective counties and subject to the rules governing elected officials, while in

another or other counties there might be an arrangement whereby these same duties would be performed by an official appointed by the board of supervisors, which official would, in addition to the duties prescribed by the general law for county surveyors, also perform the various duties set forth in section 5 of the County Engineer Act. In the counties operating under the general law, each supervisor is *ex-officio* road commissioner in his supervisorial district, whereas, in counties electing to adopt the provisions of the County Engineer Act, the county engineer would be "*ex-officio* road commissioner of and for each and every road district of his county."

[11] The word "system," as employed in the constitution, means an organized plan or scheme in keeping with which the constituent parts thereof are rendered similar and are connected and combined into one complete, harmonious whole, and it necessarily imports both a unity of purpose and entirety of operation. (*Welsh.* v. *Bramlet*, 98 Cal. 219, [33 Pac. 66]; *Board* v. *State*, 26 Okl. 366, [109 Pac. 563]; *State* v. *Riordan*, 24 Wis. 484.) As previously indicated, uniformity means consistency, resemblance, sameness, a conformity to one pattern. In this resemblance, in this sameness, in this conformity of a class to one pattern, consists the uniformity of system which is essential to the creation and continuity of a uniform system. And, therefore, the constitutional mandate to establish a uniform system of county government throughout the state means one system applicable alike in all its parts and continuously operating equally in all of the counties of the state. If a particular county were expressly exempted from the operation of the act in question, there would be no doubt but that it would violate the uniformity of system contemplated and required by the constitution. And, while in the act under consideration, no particular county is expressly exempted from the operation of the law, nevertheless people of any one or more counties may, without regard to any action taken by the remaining counties, determine that they will or will not be subject to the operation of the law and thereby, of their own volition, create an exception to the general and uniform system of county government. In other words, the legislature by the act in question attempted to do by indirection that which it could not do directly.

That is to say, having no power to exempt one or more counties from the operation of the act, it could not confer that power upon the people of the different counties. The legislature itself must by its own enactment establish in the first instance a system of county government uniform throughout the state, and it necessarily follows that such system, when once established, must, in so far as its uniformity is concerned, be kept intact by the legislature and must not be impaired by any subsequent legislation authorizing in counties a material difference in the manner of performing functions of government intrusted to them.

[12] Inasmuch as the County Engineer Act provides for a county office, involving the exercise of political functions, we conclude that the said act violates the constitutional requirement that the system of county governments prescribed by the legislature shall be uniform throughout the state, by reason of the fact that it is not mandatory in its operation, but that it is optional with each county whether or not the office provided for by the act shall be established therein. (*Los Angeles County* v. *Kirk*, 148 Cal. 385, [83 Pac. 250].)

This conclusion is not in conflict with the cases relied upon by respondents. In *Scott* v. *Boyle*, 164 Cal. 321, [128 Pac. 941], the court had under consideration a statute which authorized the appointment of sealers of weights and measures but left the determination as to whether or not this authorization should be availed of to the different counties and municipalities. The statute dealt with an office which was specifically provided for by a special section of the constitution. (Const., art. XI, sec. 14), and which the court held was "distinct from the general political functions of counties and cities and the general scheme of county or municipal government." Likewise, the statute upheld in the case of *Board of Law Library Trustees* v. *Board of Supervisors*, 99 Cal. 571, [34 Pac. 244], left to the election of the different counties the matter of the establishment of law libraries, but such institutions are not part of the system of county government, at least in so far as the execution of "political functions" is concerned, and, consequently, the point here presented was not discussed in that case. In *Tulare County* v. *May*, 118 Cal. 303, [50 Pac. 427], the act provided for one additional deputy sheriff and two deputy

187 Cal.—13

clerks in any county in which an additional judge of the superior court was created by the legislature. This provision was valid, for, as stated in the opinion, it operated in each county alike upon the creation of an additional judge in that county *by the legislature.*

The employment of plaintiff to perform the work in question was ratified by the board of supervisors by allowing his claim for compensation for the work (*Power* v. *May,* 123 Cal. 147, [55 Pac. 796]), and, in view of the fact that the County Engineer Act must be held unconstitutional, the record discloses no valid objection to the payment of the claim thus allowed. Disregarding the findings concerning the proceedings under the said County Engineer Act, the remaining findings of the trial court are sufficient to support a judgment in plaintiff's favor. Accordingly, the judgment is reversed, with directions to the trial court to grant the relief prayed for in plaintiff's petition.

Sloane, J., Wilbur, J., Angellotti, C. J., and Lawlor, J., concurred.