[Civ. No. 7534. Second Appellate District, Division One.—April 7, 1933.]

VICTOR H. STAHELI, Respondent, v. THE CITY OF REDONDO BEACH (a Municipal Corporation), Appellant.

Harry Polglase, City Attorney, for Appellant.

Leo B. Ward for Respondent.

DESMOND, J., *pro tem.*—The defendant city appeals from a judgment awarding to plaintiff the sum of $1,071.42, balance claimed as due under a contract calling for services in connection with designing and construction of a pier at Redondo Beach. On February 14, 1928, the board of trustees of Redondo Beach passed a resolution reading as follows:

"Resolution No. 70. A Resolution of the Board of Trustees of the City of Redondo Beach, California, Appointing and fixing the Compensation of Wharf Engineer of said City.

"The Board of Trustees of the City of Redondo Beach, California, do resolve as follows:

"SECTION 1: First, that VICTOR H. STAHELI be hereby appointed Wharf Engineer of the City of Redondo Beach, California.

"Second, that the compensation to be paid Victor H. Staheli as such Wharf Engineer, by the City of Redondo Beach, California, shall be as follows, to-wit:

"Upon the ordering of the plans, specifications or other wharf or pier data by the Board of Trustees of said city a retaining fee of $500.00 shall be paid.

"Upon the award of contract for the construction of a municipal wharf or pier by the Board of Trustees of said city the said Wharf Engineer shall receive 2-½ per cent of the total contract price of said wharf or pier.

"At the completion of said Municipal wharf or pier, the said Wharf Engineer shall receive a compensation of Five per cent (5%) of the actual total contract price of the con-

struction of such Municipal wharf or pier, less the 2-½% paid the said Wharf Engineer at the time of awarding the contract and the $500.00 retaining feé.

"In the event that plans, specifications and cross-sections are adopted by the Board of Trustees of the City of Redondo Beach and an Improvement Act proceeding or a bond issue instituted for the work contemplated by such plans, specifications and cross-sections, but said proceedings or bond issue fail or are abandoned then two and one-half per cent (2-½%) of the total of the Engineer's estimate cost for the construction of the Municipal Wharf or Pier according to the plans, specifications and cross-sections as submitted to the Board of Trustees at the adoption of same shall be paid by the City of Redondo Beach, as a remuneration for the work done.

"SECTION 2. That the duties of said Wharf Engineer shall be as follows, to-wit:

"Supervise the designing of (in ink) 'and also to prepare and furnish' the plans, specifications and cross-sections, also the district diagram and assessment map diagram if needed, and also, if so ordered by the said Board of Trustees, to act as supervisor for the construction of the said Municipal Wharf or pier and the inspection of said materials, etc./ (insert in ink) 'and also furnish and pay for all necessary inspectors for carefully doing such work'/ for the remuneration and compensation as hereinbefore outlined.

"SECTION 3. That VICTOR H. STAHELI is hereby appointed to act and fill the duties of Wharf Engineer of the City of Redondo Beach, California, and shall receive the retaining fee and compensation as hereinabove prescribed for said office."

Shortly before this resolution was adopted, the board of trustees, at the same meeting, had passed the following resolution numbered 719:

"Resolution No. 719. A Resolution of the Board of Trustees of the City of Redondo Beach, California, Fixing the Compensation and Duties of the City Engineer of Said City.

"The Board of Trustees of the City of Redondo Beach, California, do resolve as follows:

"SECTION 1: First, that the City Engineer shall receive the sum of One Hundred Seventy-five Dollars ($175.00) per

month as a retaining fee for General City Engineering and City Engineering advice which includes the establishment of grades, lines, lighting, maintenance assessments, assessment maps, etc.

"Second, That for street improvements, installation of lighting systems, sanitary engineering, drainage engineering, wharf or pier engineering, etc., or any work other than such General Engineering and City Engineering advice as above outlined, his compensation shall be fixed at a later date before or with the ordering of the Engineer to do such work.

"SECTION 2: That Victor H. Staheli is hereby appointed to act and fill the duties of the City Engineer as hereinbefore mentioned and receive the retaining fee as a compensation for such duties as prescribed for said office.

"Passed and adopted by the Board of Trustees of the City of Redondo Beach, California, and signed and approved by the President of the Board of Trustees of said City and attested by the City Clerk this 14th day of February, 1928."

On February 27, 1928, the city council of the City of Redondo Beach adopted resolution No. 721½ "approving and adopting profile, plan, cross-section and detail, specifications and assessment diagram for the building of a pier in the City of Redondo Beach". · These documents had been prepared and furnished by respondent.

A "Resolution of Intention" to order the building of the pier was passed as resolution No. 722 on the same day, and on the following day, February 28, 1928, resolution No. 724 ordered the building of the pier "from the foot of Emerald Street Westerly, Southerly and Easterly in the form of a horse-shoe to the Westerly terminus of Pier Avenue as particularly described in Resolution of Intention No. 722". Resolution No. 725 passed March 16, 1928, directed the work of building the pier to be done under the direction and to the satisfaction of the city engineer, expressly providing in one paragraph as follows:

"Now, Therefore, the City Council of said City of Redondo Beach does hereby determine and direct that the aforesaid work shall be done under the direction, inspection and supervision of the City Engineer of said city and the materials used shall comply with the said specifications and

be to the satisfaction of the City Engineer of said City, instead of the Superintendent of Streets of said City."

On April 16, 1928, the respondent filed with the board of trustees of the City of Redondo Beach a letter containing the following language:

"Gentlemen: I herewith tender to your Honorable Body my resignation as City Engineer of the City of Redondo Beach, but not as Wharf Engineer as set forth in Resolution No. 720 approved and adopted by the Board of Trustees on the 14th day of Feb. 1928, and herewith reserve and retain all the rights and privileges in said resolution contained and itemized therein in full. . . .

"Yours respectfully,
"VICTOR H. STAHELI,
"City Engineer."

On this same day, P. W. Kranz, who on April 4, 1928, had been awarded the contract for building the pier, signed the formal agreement for doing the work with the mayor of the city and the street superintendent of the City of Redondo Beach, acting under the authority granted by the statute governing public work known as the "Improvement Act of 1911". This contract provided that the work should be performed "in good and workmanlike manner under the direction and to the satisfaction of the City Engineer of the City of Redondo Beach, Calif., and with materials complying with the specifications hereinafter mentioned and to the satisfaction of the said City Engineer".

On April 23, 1928, according to the minutes recorded by the city clerk "Bids were read of the various applicants for the position of City Engineer. Trustee Shea moved that Mr. B. L. Bundy be appointed City Engineer and Building Inspector at the salary of $250 per month." This motion was carried by the vote of all five trustees. On April 30, 1928, the trustees by a unanimous vote declared vacant "the office of wharf engineer held by Victor Staheli". On May 7, 1928, the respondent wrote the board of trustees advising that he had arranged for inspection, at his own expense, of the demolition of the old pier, and that later for a period subsequent to April 22d he had been in San Francisco in connection with the securing of creosoted piles

for the new pier, also advising the trustees that he intended to hold the city for the balance due him.

It appeared upon this trial that the plaintiff had experienced difficulty in securing payment of the retainer of $500, which, according to resolution No. 720, was due ''upon the ordering of plans, specifications or other wharf or pier data by the Board of Trustees''. The president of the board approved the demand February 20, 1928, but payment was refused by the city treasurer on February 27th and by March 17, 1928, plaintiff had filed a petition for writ of mandate to compel payment of the retaining fee. As a result the fee of $500 was paid. The respondent also received on April 16, 1928, the day the pier contract was signed, the sum of $1,571.42, two and one-half per cent of the contract price of the pier, $62,856.81, resolution No. 720 providing that such an amount be paid upon the award of the contract. The amount sued for in the present action, $1,071.42, represents the balance of five per cent of the contract price which by the terms of said resolution No. 720 would be due at the completion of the wharf or pier. It was stipulated that the pier in question was accepted as completed January 28, 1929, prior to the institution of this action.

The appellant contends that resolution No. 719 appointed respondent an officer of the city, to wit, city engineer, and that an independent contract arising out of the resolution empowering him to act as wharf engineer necessarily would be void, under section 886 of the Municipal Corporation Act, reading as follows (Stats. 1883, p. 279):

''*No officer to be interested in any public contract.* No officer of such city or town shall be interested, directly or indirectly, in any contract with such city or town, or with any of the officers thereof in their official capacity, or in doing any work or furnishing any supplies for the use of such city or town, or its officers in their official capacity; and any claim for compensation for work done, or supplies or materials furnished, in which any such officer is interested, shall be void, and if audited and allowed shall not be paid by the treasurer. Any willful violation of the provisions of this section shall be ground for removal from office, and shall be deemed a misdemeanor and punished as such.''

The most favorable construction that can be placed on plaintiff's situation, according to the view of appellant, is

that resolution No. 720 merely defined services to be performed by respondent as city engineer in connection with pier construction and fixed his compensation for such special city engineering services. If this is a correct view of the case, there was no illegality in the contract, but it automatically terminated when the respondent ceased to act as city engineer. From the viewpoint of the appellant nothing more would be due respondent since he resigned as city engineer April 16th, and the work of supervising construction called for by resolution No. 720 subsequent to the award of the contract was performed by Mr. Bundy, appointed city engineer on April 23, 1928.

Respondent contends, however, that he was not city engineer of Redondo Beach, but was engaged under two independent contracts, and not as a city officer in either one, first, to act and fill the duties of city engineer, not, however, being appointed as such; second, as wharf engineer to perform special services as set out in resolution No. 720.

Redondo Beach was found by the court to be a city of the sixth class. In such cities it was provided in 1928 that the officers should consist of a board of five trustees to be known as the city council, a clerk to be also *ex-officio* assessor, a treasurer, a marshal to be known as chief of police and who should serve as *ex-officio* tax and license collector, a recorder to be known as the city judge, and such subordinate or other officers as are provided for in the Municipal Corporation Act. (See amendment to sec. 851, Act 5233, Stats. 1927, p. 1094.) Section 852 of the Municipal Corporation Act as amended in 1927 (Stats. 1927, p. 427) provided as follows: "The board of trustees . . . may also, in their discretion, appoint an attorney, a superintendent of streets, a civil engineer, and such other subordinate officers as in their judgment may be deemed necessary and fix their compensation. Said officers shall hold office during the pleasure of said board." It is not contended that the office of wharf engineer is a city office; in fact, appellant in its brief says: "The designating of respondent as wharf engineer did not create a new office to which he was appointed in addition to city engineer." In view of the special and restricted service called for by resolution No. 720, merely designing and supervising construction of a municipal pier, we are of the opinion that the employment thereunder of respondent was

in all particulars similar to the ordinary contract by which a city engages the services of an expert engineer, frequently called a consulting engineer, to plan and carry to completion a single piece of public work, therefore conclude that respondent as wharf engineer was not a city officer. (*Bunn* v. *People,* 45 Ill. 397, cited in *Patton* v. *Board of Health, etc.,* 127 Cal. 388, at p. 396 [59 Pac. 702, 78 Am. St. Rep. 166].) ''The contract only required him to render such services as might be required of him in the capacity in which he engaged to act (like a lawyer to give professional advice), and if the supervisors either put it out of his power, or disabled him from rendering these services, we do not see that he is not entitled to the salary agreed upon. The contract having been made by the Board of Supervisors, it was not in their power to abrogate it by rescinding the order under which the plaintiff was appointed, or abolishing the office.'' (*McDaniel* v. *Yuba County,* 14 Cal. 445.) If, therefore, the contract for wharf engineering services was valid, the action of the trustees April 30, 1928, declaring the ''office'' of wharf engineer vacant was ineffective so far as concerned the rights of respondent thereunder.

It remains to determine whether resolution No. 719 appointed respondent to a public office, to wit: City engineer. Inasmuch as resolution No. 720 adopted immediately thereafter opened with the words ''Victor H. Staheli is hereby appointed Wharf Engineer of the City of Redondo Beach, California,'' we are struck by the omission of any such language from resolution No. 719, and the significance of the omission is intensified by the phrase appointing respondent ''to act and fill the duties of *the* City Engineer . . . and receive the retaining fee as a compensation for such duties as prescribed for said office''. We observe also that by its caption, resolution No. 720 is one *''Appointing* and Fixing Compensation of Wharf Engineer of said City,'' while resolution No. 719 is one merely ''Fixing the Compensation and Duties of the City Engineer of said City.''

In the case of *Kennedy* v. *City of Gustine,* 199 Cal. 251 [248 Pac. 910], we find a situation where the board of trustees of a city of the sixth class appointed C. C. Kennedy ''as city engineer, his compensation to be seven per cent of cost of construction work''. The agreement under which plaintiff in that case went to work provided:

"That for and in consideration of the compensation to be paid by the party of the first part to the party of the second part at the times and in the manner hereinafter provided, the party of the first part hereby employs said party of the second part as City Engineer of the said City of Gustine, for the purpose of performing the engineering work and supervising the construction of certain street improvements in said City of Gustine, namely: The construction of curbs, sidewalks and pavement upon (naming certain streets) during the present and next succeeding calendar year". Construing this agreement and determining liability thereunder, the court said (p. 255): "It is clear, however, that the plaintiff was not an officer of the city, but that he was employed, not to discharge the general duties of the office of city engineer, but only the particular engineering work specified in the contract. . . . Any reference to him in the minutes or the contract or in the evidence as 'city engineer' is not controlling. Whether a position, or office, is a public office depends 'not upon what the particular office in question may be called, nor upon what a statute may call it, but upon the power granted and wielded, the duties and functions performed and other circumstances which manifest the true character of the position and make and mark it a public office, irrespective of its formal designation'." (Citing *Coulter* v. *Pool*, 187 Cal. 181, 186 [201 Pac. 120], and other California cases.)

Although respondent was employed to fill the duties of the city engineer of Redondo Beach and resolution No. 719 provided as his compensation the sum of $175 per month as a *retaining fee* for general city engineering and city engineering advice, we are not convinced that the use of those words constituted him individually a city officer, particularly since he was not definitely appointed city engineer and in view of the fact that almost every conceivable kind of city engineering work as popularly understood is left by the same resolution in the balance to await future development or possibly future disagreement. Since respondent was engaged on a retainer basis to give general engineering advice in the first instance, and later, if required, to give special advice or special service on compensation to be determined, it seems reasonable to say that from this reso-

lution arose a private contract with an individual rather than the creation of a public office.

We find the plaintiff in this case, as in the case of *Mc-Daniel* v. *Yuba County, supra,* "engaged to act, like a lawyer, to give professional advice" and this impression is strengthened by the provision that his employment is on the basis of a retainer. As in practically every action where the decision centers upon interpretation of the term "office", we must reach our conclusion by consideration of the surrounding circumstances, giving point to the court's remarks in *Patton* v. *Board of Health,* 127 Cal. 388, at page 397 [59 Pac. 702, 705, 78 Am. St. Rep. 66]: "Illustrations might be multiplied, but it would only emphasize what must already be apparent, that the definitions of the term 'office', while not inaccurate, taken in a general sense, are quite inadequate when applied to particular cases. An examination of adjudicated cases will show that the disagreement among judges has not been so much as to definitions as in their application to the circumstances of each particular case."

It is urged by respondent that the questions we have undertaken to decide have already been definitely disposed of in the hearing upon the petition for writ of mandate. However, at the time of that hearing, the pier was not completed and balance above the $500 initial payment and two and one-half per cent of the contract price was not due. Rather than apply the rule of *res judicata* to consideration of such a contract calling for installment payments, it seems advisable by means of this opinion to record our views as applied to the contracts in their entirety.

Appellant complains of the action of the trial court in ruling that evidence relative to preparation of the assessment map and the necessity for employing an inspector after April 23, 1928, was immaterial. In our view of the case, no useful purpose would have been served in showing that the map was prepared by Mr. Bundy and inspection provided by the city, for both these events occurred after the city, on April 30, 1928, had declared vacant "the office of wharf engineer held by Victor Staheli", and there was no offer to prove that he was thereafter requested to prepare an assessment map or furnish any inspection.

The judgment is affirmed.

Houser, Acting P. J., and York, J., concurred.