TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 86-603 |
| of | : | APRIL, 15, 1987 |
| JOHN K. VAN DE KAMP<br>Attorney General | : | |
| ANTHONY S. DA VIGO<br>Deputy Attorney General | : | |

_____

THE HONORABLE RICHARD E. FLOYD, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

Do the prevailing wage provisions of Labor Code section 1771 apply to the employees of an engineering firm which contracts with a city to perform the duties of city engineer?

CONCLUSION

The prevailing wage provisions of Labor Code section 1771 apply to the employees of an engineering firm which contracts with a city to perform the duties of city engineer, except with respect to such duties which do not qualify as a public work.

ANALYSIS

We are advised that a city has entered into a contract with a private engineering firm to perform, on an extended basis, all or a portion of those duties which

1

would ordinarily be performed by a city engineer.  The firm is required upon written authorization of the city manager to provide all necessary consulting engineering services needed for the preparation of special reports, investigations and studies, plan checking, surveying and inspections, the preparation of plans, specifications and cost estimates and any other special municipal projects or programs requiring specialized consulting services.

We are asked whether the prevailing wage provisions of Labor Code section 1771 apply to such surveyors and related employees.  The inquiry assumes that the work in question is a "public work" within the meaning of that section, as defined in section 1720 of said code:

"As used in this chapter 'public works' means:

"(a) Construction, alteration, demolition or repair work done under contract and paid for in whole or in part out of public funds, except work done directly by any public utility company pursuant to order of the Public Utilities Commission or other public authority.

"(b) Work done for irrigation, utility, reclamation and improvement districts, and other districts of this type.  'Public work' shall not include the operation of the irrigation or drainage system of any irrigation or reclamation district, except as used in Section 1778 relating to retaining wages.

"(c) Street, sewer or other improvement work done under the direction and supervision or by the authority of any officer or public body of the state, or of any political subdivision or district thereof, whether such political subdivision or district operates under a freeholder's charter or not.

"(d) The laying of carpet done under a building lease-maintenance contract and paid for out of public funds.

"(e) The laying of carpet in a public building done under contract and paid for in whole or part out of public funds."

We have previously considered in another context the meaning of "public works" as it relates to such engineering services.  (63 Ops.Cal.Atty.Gen. 501, 504-508 (1980).)  It was there observed that each contract must be separately reviewed to determine whether the work in question qualifies as such.  (*Id.*, 506-507.)  That similar distinctions must be drawn with regard to the application of prevailing wage requirements

2

to engineering services is indicated, for example, by the specifications of Title 8, California Administrative Code, section 16001, subdivision (c), providing that certain field survey work is subject to such requirements "when it is integral to the specific public works project in the design, preconstruction, or construction phase." A letter dated March 30, 1978 from the Director of Industrial Relations to Public Agency Awarding Bodies contained the following administrative interpretation:

> "As the person authorized by the Legislature to determine prevailing wage rates, I have determined that surveyors are included in the prevailing wage law pertaining to public works, § 1720 *et seq.* and § 1770 *et seq.* of the Labor Code.

> "A general determination has been made that when a firm performs engineering, surveying, and photogrammetry work for preparation of any plans and specifications for an awarding body under contract, the work of the surveyors, or those assisting the surveyors to establish field control lines, is to be paid at prevailing wage rates according to Part 7 of the Labor Code which deals with 'Public Works and Public Agencies.'

> "Surveying, whether performed in the preparation or construction stage, is a necessary prerequisite and integral part of construction without which the work could not proceed and is performed by the type of classification of worker intended to be covered by the Act (§ 1723 and § 1772 of the Labor Code).

> "Covered work includes all field survey work related to the engineering phase of a public works project, as well as to the construction phase of a public works project. The engineering phase includes field survey work for feasibility and design. Covered work does not include field survey work, such as general land surveying and mapping, related to the planning function of agencies covered by the prevailing wage law; nor does it include office work."

It is not the purpose of this discussion to factor analyze all of the performance dimensions of a city engineer to determine which would or would not, if performed by a private concern pursuant to contract, qualify as a public work. By its own terms, Labor Code section 1771 does not apply to work which does not so qualify. With respect to work that does so qualify, that section provides:

> "Except for public works projects of one thousand dollars ($1,000) or less, not less than the general prevailing rate of per diem wages for work

3

of a similar character in the locality in which the public work is performed, and not less than the general prevailing rate of per diem wages for holiday and overtime work fixed as provided in this chapter, shall be paid to all workers employed on public works.

"*This section is applicable only to work performed under contract, and is not applicable to work carried out by a public agency with its own* forces. This section is applicable to contracts let for maintenance work." (Emphasis added.)

Hence, the issue arises as to whether the work in question is "performed under contract" or "carried out by a public agency with its own forces." The prevailing wage requirement applies in the former but not the latter circumstance.

In its contract with the city the firm is characterized as "the City Engineer." Reference is made to Government Code section 36505, providing that

"The city council shall appoint the chief of police. It may appoint a city attorney, a superintendent of streets, a *civil engineer*, and such other subordinate officers or employees as it deems necessary." (Emphasis added.)

Hence, it is suggested that the prevailing wage law does not apply where the duties in general of a city engineer are performed on an ongoing basis by a private firm acting as city engineer, as distinguished from an independent contractor, and that its employees are therefore the city's "own forces." We shall first consider whether the contractual designation "City Engineer" is determinative of one's status as an appointee to public office under Government Code section 36505, *supra*, as distinguished from a contractor under section 37103 of said code.

A city may enter into a contract with an engineer for specialized services. (Gov. Code, § 37103.) Such a contract does not render the engineer a city officer. (28 Ops.Cal.Atty.Gen. 362, 364 (1956).) On the other hand, a contract for services is not inherently inconsistent with public office, where the contractor has been duly appointed and taken the required oath. (*Id.*) The status of such a contractor must be determined by the duties and powers conferred, and not solely by contractual references as "city engineer" or other appointive terms in the contract. (*Id., Staheli* v. *City of Redondo Beach* (1933) 131 Cal.App. 71, 79.) In the latter case the court construed a contract providing in part that Staheli "is hereby appointed to act and fill the duties of the City Engineer . . ." (*id.*, 78-80):

4

"In the case of *Kennedy* v. *City of Gustine*, 199 Cal. 251 [248 Pac. 910], we find a situation where the board of trustees of a city of the sixth class appointed C. C. Kennedy 'as city engineer, his compensation to be seven per cent of cost of construction work'. The agreement under which plaintiff in that case went to work provided:

"'That for and in consideration of the compensation to be paid by the party of the first part to the party of the second part at the times and in the manner hereinafter provided, the party of the first part hereby employs said party of the second part as City Engineer of the said City of Gustine, for the purpose of performing the engineering work and supervising the construction of certain street improvements in said City of Gustine, namely: The construction of curbs, sidewalks and pavement upon (naming certain streets) during the present and next succeeding calendar year'. Construing this agreement and determining liability thereunder, the court said (p. 255): 'It is clear, however, that the plaintiff was not an officer of the city, but that he was employed, not to discharge the general duties of the office of city engineer, but only the particular engineering work specified in the contract. . . . Any reference to him in the minutes or the contract or in the evidence as "city engineer" is not controlling. Whether a position, or office, is a public office depends "not upon what the particular office in question may be called, nor upon what a statute may call it, but upon the power granted and wielded, the duties and functions performed and other circumstances which manifest the true character of the position and make and mark it a public office, irrespective of its formal designation".' (Citing *Coulter* v. *Pool*, 187 Cal. 181, 186 [201 Pac. 120], and other California cases.)

"Although respondent was employed to fill the duties of the city engineer of Redondo Beach and resolution No. 719 provided as his compensation the sum of $175 per month as a *retaining fee* for general city engineering and city engineering advice, we are not convinced that the use of those words constituted him individually a city officer, particularly since he was not definitely appointed city engineer and in view of the fact that almost every conceivable kind of *city engineering work* as popularly understood *is left by the same resolution in the balance to await future development or possibly future disagreement*. Since respondent was engaged on a retainer basis to give general engineering advice in the first instance, and later, if required, to give special advice or special service *on compensation to be determined*, it seems reasonable to say that from this

5

resolution arose a private contract with an individual rather than the creation of a public office." (Last two emphases added.)

Similarly, with regard to the matter under consideration, it is undisputed that (1) the firm is retained by and subject to the terms and conditions of a contract, (2) services are to be performed only upon the written authorization of the city manager, and (3) the method of compensation for services rendered by the firm is to be approved for each project by the city manager. Thus, as in the *Staheli* case, each project is left to await future development or possible future disagreement, for compensation to be determined.

Further problems arise with regard to the appointment of a corporation as a public officer. Unless otherwise provided, each public officer must first take and subscribe the constitutional oath. (Cal. Const., art. XX, § 3; Gov. Code, §§ 1360 & 36507.) In addition, a person who is not 18 years of age and a citizen of this state at the time of election or appointment is incapable of holding a civil office. (Gov. Code, § 1020.) While a corporation may be characterized as a citizen of the state of its creation (*Keystone Driller Co.* v. *Superior Court* (1903) 138 Cal. 738, 742), it is so considered only for the purpose of protecting the property rights of the incorporators (*County of San Mateo* v. *Southern Pac. R. Co.* (CC Cal. 1882) 13 F. 722, 747, writ dism. 116 U.S. 138).[1]

The salient fact remains, in any event, that the surveyors and other personnel who perform such services are employed and compensated by the firm. Whether or not the firm may be deemed a public officer, employee, or agent, it is not the city. In our view, therefore, the argument propounded is inconsistent with the plain meaning of section 1771 and with the nature and purpose of its requirements.

The prevailing wage prescription of section 1771 is contained in the first sentence which applies unequivocally to "*all* workers employed on public works." The second sentence is an exception relating to "work carried out by a public agency with its own forces." This exception is specifically limited to work done by force account (*Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 64; *O.G. Sansone Co.* v. *Department of Transportation* (1976) 55 Cal.App.3d 434, 459), i.e., by its own employees as distinguished from work performed pursuant to contract with a commercial firm for similar services (see, Webster's Third New Internat. Dict. (1961) p. 887; *Jackson* v. *Pancake* (1968) 266 Cal.App.2d 307, 311).

Manifestly, employees of the firm are not those of the city. In this regard it should be recalled that statutory exceptions should be narrowly construed. (*Lacabanne*

---

[1] Still another issue concerns the meaning of "business activity" under Corporations Code sections 206 and 207, for purposes of holding public office.

*Properties, Inc.* v. *Dept. Alcoholic Bev. Contr.* (1968) 261 Cal.App.2d 181, 189; 66 Ops.Cal.Atty.Gen. 24, 26 (1983).) Further, expressly excluded from the exception is "work performed under contract." Hence, the rule applies that where statutory language is clear and unambiguous, there is no need for construction and the courts should not indulge in it. (*Board of Supervisors* v. *Lonergan* (1980) 27 Cal.3d 855, 866; 66 Ops.Cal.Atty.Gen. 217, 221-222 (1983).)

Nor would the exemption of the firm's employees be consistent with the nature and purpose of the prevailing rate standards. With respect to such purpose, the court stated in *O.G. Sansone Co.* v. *Department of Transportation*, *supra*, 55 Cal.App.3d at 458:

"Little has been written in judicial opinions concerning the purpose of the California legislation. However, cases have expounded on the purpose of the Davis-Bacon Act (40 U.S.C. § 276a et seq.) The Supreme Court stated in *U.S.* v. *Binghamton Construction Co.*, 347 U.S. 171, at pages 176-177: 'The language of the [Davis-Bacon] Act and its legislative history plainly show that it was not enacted to benefit contractors, but rather to protect their employees from substandard earnings by fixing a floor under wages on Government projects.' And in *International U. of Operating Eng. Local 627* v. *Arthurs* (W.D. Okla. 1973) 355 F.Supp. 7, at page 8, it was stated: 'The purpose of the Davis-Bacon Act is to provide protection to local craftsmen who were losing work to contractors who recruited labor from distant cheap-labor areas. S.Rept. 963, Mar. 17, 1964 (to accompany H.R. 6041), 1964 U.S. Code Congressional and Administrative News, pp. 2339, 2340. Some contractors pay wages according to collective bargaining agreements. But even though these contractors usually are required to pay higher wage scales, they can still compete with nonunion contractors for public contract work because of the Davis-Bacon Act prevailing wage scale provision. Noncompliance with the Davis-Bacon Act makes it impossible for all contractors to compete. There is thus injury to the laborers and mechanics, as well as injury to contractors and labor organizations.'

"It has been said that the provision for payment of prevailing wages on state construction works serves as a public policy in that the state will benefit from 'the superior efficiency of well-paid labor working during reasonable hours' and that such benefit justifies the employment of men on 'less favorable terms than could be secured by the stress of competition.' (65 Am.Jur.2d, Public Works and Contracts, § 199, p. 87.)"

7

If exempt, workers employed and compensated by the firm would enjoy neither the benefit of a salary established by law, nor of a salary subject to the constraints of section 1771. We perceive no such legislative oversight.

It is concluded that the prevailing wage provisions of Labor Code section 1771 apply to the employees of an engineering firm which contracts with a city to perform the duties of city engineer, except with respect to such duties which do not qualify as a public work.

*****