[L. A. No. 17878.   In Bank.—May 12, 1941.]

CONSOLIDATED PRINTING AND PUBLISHING CO. (a Corporation), Petitioner, v. WAYNE ALLEN, as County Purchasing Agent, etc., Respondent.

Frank P. Doherty, William R. Gallagher, Frank W. Doherty, Kenneth K. Wright, Hill, Morgan & Bledsoe and A. J. Hill for Petitioner.

J. H. O'Connor, County Counsel, and Roy W. Dowds, Assistant County Counsel, for Respondent.

Harlan G. Palmer, Rollin L. McNitt and Edythe Jacobs, as *Amici Curiae,* on behalf of Respondent.

PULLEN, J., *pro tem.*—Petitioner is a taxpayer and property owner in the county of Los Angeles, and is also the owner and publisher of The Los Angeles Daily Journal, a daily newspaper of general circulation, printed and published in that county. Respondent is the purchasing agent of the county of Los Angeles.

In February, 1941, as such purchasing agent, respondent prepared specifications for the publication of all notices and for all advertising of said county and its departments, including the publication of the delinquent tax list, *addenda,* and indices for the year 1940, and requested bids for the doing of such work from all newspapers of general circulation published in the county of Los Angeles. In accordance with such invitation petitioner submitted its offer to do the work, including a bid to print and publish the delinquent tax list, *addenda,* and indices for the year 1940.

After the time fixed for the submission of bids it became known to petitioner that respondent intended to award the work in accordance with the provisions of article 2, chapter 1, part 6, division 1 of the Revenue and Taxation Code, being sections 3391 to 3403, both inclusive of said code. Petitioner thereupon demanded that the contract for the publication of the delinquent tax list, *addenda,* and indices be awarded in compliance with the requirements of section 3356 of the Revenue and Taxation Code, and that respondent reject all bids proposing to do such printing pursuant to the provisions of sections 3391 to 3403, contending these latter sections were special legislation and therefore unconstitutional. Upon the rejection by respondent of petitioner's demand, this proceeding in *mandamus* was instituted.

The right of petitioner to seek a writ of mandate is based upon two grounds: First, upon its status as a taxpayer and property owner of the county of Los Angeles, and second, upon the fact that it is a corporation with principal place of business in the city of Los Angeles, engaged as owner in the

printing and publishing of a newspaper of general circulation in the city of Los Angeles, known as the Los Angeles Daily Journal, and that it is the low bidder for the specified printing if section 3356 is to be used as the basis for awarding such work.

With reference to the printing of the delinquent tax list, which the tax collector of each county is required by law to publish annually, section 3356 of the Revenue and Taxation Code, a general provision, requires that such publication shall be made once a week for three successive weeks in a newspaper of general circulation, published in the county, and if there is no such newspaper published in the county, then the publication shall be by posting. The cost of such publication, it is provided, shall not exceed the rate fixed by the board of supervisors for other county advertising.

Sections 3391 to 3403 also pertain to the printing of the delinquent tax lists but are applicable to counties of the first class exclusively, and Los Angeles County is the only county of that class in California. These sections provide that there shall be published, in a newspaper at the county seat, the delinquent tax list, the *addenda,* and the indices covering property which is located in the county seat, in unincorporated territory, in municipalities in which there is no newspaper published at least once a week, and in municipalities in which such a newspaper is published, when it will not publish except at a rate in excess of the official rate. For the publication of that portion of the delinquent list affecting property located in a city other than the county seat, in which a newspaper of general circulation is published at least once a week which will make the publication at a rate not in excess of the rate for official publication for the city, it is provided that the publication shall be made in such city, and further that preference shall be given to a daily newspaper; if none, then to a semi-weekly; or if neither, then to a weekly newspaper.

It is the contention of petitioners that section 3356 is a general law, that the requirements of sections 3391 to 3403 prevent the uniform operation of section 3356, and that those sections are therefore unconstitutional, being contrary to article I, section 11 of the Constitution of the state, which provides that all laws of a general nature shall have a uniform

operation. It is further contended that such sections are special provisions affecting the assessment and collection of taxes, and as such violate article IV, section 25, subdivision 10, which prohibits the passage of local or special laws for the assessment or collection of taxes, and that they are also contrary to subdivision 33 of the same section which prohibits the passage of local or special laws, when a general law can be made applicable. It is also claimed that the sections violate article XI, section 5 of the Constitution in that they attempt to classify counties for purposes other than regulation of the compensation of certain county officers.

The first point to be considered is whether *mandamus* is the proper remedy under the facts here presented. It is true that *mandamus* will not issue to control the exercise of the judgment and discretion which the law reposes in a public officer as a part of his official function (*Pacific Palisades Assn.* v. *Huntington Beach,* 196 Cal. 211 [237 Pac. 538, 40 A. L. R. 782]), but the writ will issue where the duty is one specifically enjoined by reason of an office, trust, or station (Code Civ. Proc., sec. 1085), or where the law imposes upon such officer specific duties which he refuses to perform because of an erroneous conclusion as to his legal duties (*Hartsock* v. *Merritt,* 94 Cal. App. 431 [271 Pac. 381]), or where petitioner is entitled by law to a certain action (*Inglin* v. *Hoppin,* 156 Cal. 483 [105 Pac. 582]).

The question of classification of counties has been considered by our courts on numerous occasions, and is not without its difficulties. Prior to 1933, section 4 of article XI, provided that ''the legislature shall establish a system of county governments which shall be uniform throughout the state. . . . '' This in effect practically prohibited the classification of counties for any purpose. However, an exception was stated in the succeeding section (art. XI, sec. 5), wherein authority was granted to classify for the purpose of fixing compensation. It is there provided: ''It (the legislature) shall regulate the compensation . . . and for this purpose may classify the counties by population. . . . '' In the earlier cases there are statements that under article XI, section 5, or under that section considered with article XI, section 4, the legislature was empowered only to classify counties for compensation fixing purposes and none other.

For example, in *County of San Luis Obispo* v. *Graves,* 84 Cal. 71, 76 [23 Pac. 1032], it was said: "Except for the sole purpose of fixing the compensation of county officers in proportion to their duties, the duty of the legislature was and is to 'establish a system of county governments which shall be uniform throughout the state.' (Art. 11, sec. 4.)"

In *Turner* v. *County of Siskiyou,* 109 Cal. 332 [42 Pac. 434], is found the following: "The difficulty is not removed by the fact that the counties are classified, and that the provision applies to all counties of a certain class; because, under section 5 of article XI, counties may be classified *only* for the purpose of regulating the compensation of certain public officers therein enumerated. (*Dougherty* v. *Austin,* 94 Cal. 601 [28 Pac. 834, 29 Pac. 1092, 16 L. R. A. 161]; *Welsh* v. *Bramlet,* 98 Cal. 219 [33 Pac. 66].)"

In *Pratt* v. *Browne,* 135 Cal. 649 [67 Pac. 1082], it is said: "It is plain that the legislature is, by the terms of the above section, given the power to classify only for the purpose of regulating the compensation of 'such officers',—that is, of the county officers therein named, or such other county, township, and municipal officers as may have been provided for by the legislature. The sole purpose of the classification provided for in the section is the regulation of the compensation of the officers in proportion to their duties. (*County of San Luis Obispo* v. *Graves,* 84 Cal. [71] 75 [23 Pac. 1032]; *Turner* v. *County of Siskiyou,* 109 Cal. [332] 334 [42 Pac. 434]; *San Francisco* v. *Broderick,* 125 Cal. [188] 193 [57 Pac. 887].)"

Likewise in *Sanchez* v. *Fordyce,* 141 Cal. 427 [75 Pac. 56], citing *Pratt* v. *Browne, supra,* it is said: "The additional point is here made that, as section 5 of article XI of the constitution authorizes the legislature to 'regulate the compensation of all such officers (county officers) in proportion to duties, and for this purpose may classify the counties by population,' therefore it cannot directly or indirectly classify the counties for any other purpose than the one purpose of regulating the compensation of county officers. We agree with appellants' counsel that under this provision of the Constitution the legislature can classify counties but for the one purpose of regulating the compensation of county officers. It has been so held by this court. (*Pratt* v. *Browne,* 135 Cal. [649] 650 [67 Pac. 1082].)" (See, also, *Bloss* v. *Lewis,* 109

Cal. 493 [41 Pac. 1081] ; *Marsh* v. *Hanly,* 111 Cal. 368 [43 Pac. 975] ; *Rauer* v. *Williams,* 118 Cal. 401, 405 [50 Pac. 691] ; *In re Brady,* 65 Cal. App. 345 [224 Pac. 252] ; *Coulter* v. *Pool,* 187 Cal. 181 [201 Pac. 120].)

All of these cases were decided prior to the repeal in 1933 of article XI, section 4 of the Constitution, which left section 5 of article XI, which merely states that the legislature "may" classify counties for the purpose of fixing the compensation of certain officers. An examination of the argument to the voters at the election held June 27, 1933, where the matter of the repeal of sections 4 and 9 of article XI and the amendment of section 5 of article XI was discussed, indicates that it was the purpose of the proposed constitutional amendment to vest more power in the board of supervisors and to make the government of the county more responsive to local demands.

Section 4006 of the Political Code, evidently enacted to carry out article XI, section 5 of the Constitution, divides the counties of the state into 58 classes, stating, "For the purpose of regulating the compensation of all officers herein provided for, the several counties of this state are hereby classified, according to their population . . . as follows, to wit: First class. Counties containing a population of nine hundred thousand and over shall belong to and be known as counties of the first class. . . . "

Section 3391 of the Revenue and Taxation Code here under consideration reads, "In each county of the *first class* and no other, the published delinquent tax list and all items required to be published . . . shall be published as provided in this article . . . " It is evident, therefore, that the legislature attempted to adopt and apply the classification described in section 4006 of the Political Code, enacted expressly for the purpose of classifying counties for regulation of the compensation of certain officers, to an entirely different matter, namely, one pertaining to a matter of taxation.

The contention of petitioner that the legislature, in enacting sections 3391 to 3403 attempted to set up a special procedure to control a matter which was already governed by an effective general statute (sec. 3356), and that sections 3391–3403 were therefore violative of the Constitution (art. I, sec. 11, art. IV, sec. 25, subd. 33), appears sound.

In *Ventura County Harbor Dist.* v. *Board of Supervisors,* 211 Cal. 271 [295 Pac. 6], where the legislature had attempted to create the Ventura County Harbor District by a special act (Stats. 1927, p. 1819), the act was held to be invalid and violative of the foregoing sections of the Constitution because there was then in effect a general act under which the proposed improvement could be carried out, and the general statute controlled over the special statute. This court there said: "It seems clear to us that if the legislature itself defines, declares and puts in operation a general law upon a subject, the courts can do nothing less than apply the constitutional provisions quoted and declare the special act invalid under the mandatory provisions of the Constitution." Referring to article I, section 11, of the Constitution providing that all laws of a general nature shall have a uniform operation, and article IV, section 25, subdivision 33, providing that special laws shall not be passed where a general law can be made applicable, this court further stated: "We realize also that in the first instance the question as to whether or not a special act can be made applicable is addressed to the legislature and that unless we can see from the face of the act or from facts of which we take judicial cognizance that the case is one in which a special act may not be passed, we will uphold the validity of such legislation. But these presumptions do not aid us where, as here, the legislature itself has by its own solemn act, declared that a general act may be passed covering the subject matter contained in the special act. We then have the legislature itself deciding that a general statute is applicable to the subject covered by the special act."

The opinion distinguishes the case of *People* v. *Mullender,* 132 Cal. 217 [64 Pac. 299], relied upon here by respondent, on the ground that at the time the special act there under review was passed, there was no general law in existence on the subject, and therefore the courts presumed the legislature had before it facts showing the impracticability of a general law and the necessity for a special law, but, the opinion further says, "where the legislature has spoken the matter does not rest upon presumption, but upon open facts which show that the general law is valid and the special act is therefore invalid."

In the instant case, prior to the enactment of the special provisions, section 3766 of the Political Code, now 3356 of the Revenue and Taxation Code, had provided for a uniform method of publication in all of the counties of the state, indicating that such a general law was both applicable and workable, and the courts are not now called upon to dispute that fact.

Respondent attempts to point out various natural and intrinsic differences existing in Los Angeles County and to show that a different classification by the legislature in reference to the publication of the delinquent tax lists may be sustained as to that county. As one reason for the special method of publishing the delinquent tax lists in counties of the first class, i. e., Los Angeles County, it is said that the area of that county is over four thousand square miles with a population of approximately 2,785,000, being over one-third of the population of the entire state. It is also cited as a fact that within the county of Los Angeles there are forty-four municipal corporations in addition to the city of Los Angeles, some of which have a substantial population and others are a considerable distance from the seat of the county government.

These facts as to the size, population, and number of separate municipalities, however, cannot be accepted as such distinguishing features as to override the constitutional mandate. Regardless of these differences the position of the delinquent taxpayer with relation to the taxing agent is not changed, and while Los Angeles County has the largest population of any county in the state, it is not the largest geographically. Other counties have municipalities farther removed from the county seat, and many have a seat of government more inaccessible and with less opportunity of intercommunication between the county seat and the outlying incorporated cities than is found in the county of Los Angeles.

If it is an advantage to the taxpayer of counties of the first class, as urged by respondent, that is, to Los Angeles County taxpayers, to have the delinquent list published in the municipality where the property is situated, it must be equally beneficial to taxpayers of other counties which have municipalities other than the county seat within their boundaries. If perchance the method set forth in sections 3391 to

3403 may be a burden imposed upon the taxpayers of counties of the first class, then they should not suffer under a load that is not inflicted upon counties of other classifications. The distinction seems to be directed to the size of the county and not to the size of the cities in which the publication is required. It does not appear that the delinquencies in the county of Los Angeles are larger than in cities of other counties, nor that the general statute has failed in any way to accomplish the purpose for which it was enacted, when Los Angeles County is compared with the counties of the state as a whole. Furthermore, the special statutes obviously attempt to deal with the collection of taxes, a matter which the Constitution specifically enjoins shall be governed by general statute. (Const., art. IV, sec. 25, subd. 10.)

We can find no natural, intrinsic, or constitutional ground of distinction between the county of Los Angeles and other counties which would justify the application of a special procedure with reference to the sale of delinquent property.

Let the peremptory writ issue.

Traynor, J., Shenk, J., and Curtis, J., concurred.