[Civ. No. 2971.   Fourth Dist.   Feb. 9, 1942.]

JOEL E. OGLE, as County Counsel, etc., Petitioner, v. L. H. ECKEL, as County Auditor, etc., Respondent.

Joel E. Ogle, in pro. per., and Earl Redwine for Petitioner.

George F. Holden, District Attorney, S. B. Kaufman and Theodore R. Coomber for Respondent.

GRIFFIN, J.—Petitioner, as County Counsel of Orange County seeks a writ of mandate directed to respondent as Auditor of Orange County requiring him to draw his warrant in favor of petitioner in the sum of $285.70, as and for compensation claimed to be due petitioner for services rendered to Orange County as County Counsel thereof from October 17, 1941, to November 3, 1941.

Petitioner alleges in the petition (1) that the position of County Counsel of Orange County was created and given certain powers dependent on action of the county board of supervisors pursuant to and in compliance with the provisions of chapter 618 of the statutes of 1941. (2) That pursuant to section 2 thereof the board of supervisors of that county, which county has a population of more than 100,000 inhabitants, did on September 16, 1941, adopt an ordinance which by section 57c thereof fixed his monthly compensation; that this ordinance is now in effect; that on September 16, 1941, petitioner was appointed County Counsel by resolution of the board of supervisors effective October 17, 1941; that respondent is the Auditor of Orange County; that petitioner demanded that respondent draw and deliver his warrant for the sum above mentioned; that sufficient funds are available for such purposes; that respondent refused to draw the warrant "because of the fact that said respondent entertained some doubt as to the constitutionality of chapter 618 of the statutes of 1941" and ". . . that section 4041.12a of the Political Code is in violation of article XI, section 5, and article IV, section 25, subsection 28, of the Constitution of the State of California . . ."; that a writ should be issued because on the validity of section 2, of chapter 618, page 2074 of the Statutes of 1941, depends the orderly administration of the county government of the county of Orange for the reason that many and various duties heretofore required to be done by the District Attorney of Orange County are now by statute required to be done by the County Counsel of the county of Orange; and that all of the more populous counties falling within the provisions of this chapter will be confronted with the same problems and difficulties regarding the orderly administration of county government as are now confronted by that county.

Respondent demurred to the petition on the ground that it did not state facts sufficient to constitute a cause of action. No other appearance was filed. Respondent did not desire to

file an answer. The facts set forth in the petition therefore stand undenied. Respondent now contends that section 4041.12a of the Political Code and the ordinance of the county of Orange creating the office of county counsel are null and void as being in violation of article XI, section 5, and article IV, section 25, subsection twenty-eighth of the Constitution.

Section 4041.12a of the Political Code provides in substance that in counties having a population of 100,000 or more, the board of supervisors may appoint a county counsel, and said section further provides that the county counsel shall perform all duties required by law of the district attorney, except the duties of public prosecutor. It further provides that the county counsel shall be appointed for a period of four years and until his successor is appointed. It is now argued that under the constitutional provisions above mentioned the legislature had no power to classify counties except for the purpose of fixing the compensation of officers, and that any attempt by the legislature to classify the counties for the purpose of creating an office that is not uniformly established throughout all the counties is null and void, citing *Rauer* v. *Williams,* 118 Cal. 401 [50 Pac. 691] ; *San Francisco* v. *Broderick,* 125 Cal. 188 [57 Pac. 887] ; *Galvin* v. *Board of Supervisors,* 195 Cal. 686 [235 Pac. 450] ; *Sanchez* v. *Fordyce,* 141 Cal. 427 [75 Pac. 56] ; *Payne* v. *Murphy,* 18 Cal. App. 446 [123 Pac. 350] ; *Pratt* v. *Browne,* 135 Cal. 649 [67 Pac. 1082] ; *Welsh* v. *Bramlet,* 98 Cal. 219 [33 Pac. 66]. In other words, it is argued that any laws creating a county office or regulating the duties of a county officer, in order to be general and uniform, must be applicable to all of the counties in the state; that section 4041.12a of the Political Code delegates the authority to the board of supervisors of each county having a population of 100,000 or more to appoint a county counsel and that under article XI, section 5 of the Constitution the powers granted to the legislature in that section cannot be delegated to the board of supervisors, citing *Arnold* v. *Sullenger,* 200 Cal. 632 [254 Pac. 267] ; *Coulter* v. *Pool,* 187 Cal. 181 [201 Pac. 120] ; *People* v. *Wheeler,* 136 Cal. 652 [69 Pac. 435].

The office of county counsel, as here intended to be created and classified by the duties and functions to be performed, is a county office within the meaning of article IV, section 25, subsection twenty-eighth. (*Coulter* v. *Pool, supra.*) Under article XI, section 5, the legislature, by

general and uniform laws, is empowered to provide for the appointment, in the several counties, of such county officer, if public convenience may require, prescribe the duties thereof, and fix the term of office. The board of supervisors of each respective county is authorized to regulate the compensation. The purpose of the constitutional provision requiring that laws throughout the state, affecting municipal corporations, be uniform in character, arose as a design of the framers of the Constitution to prevent, on the part of the legislature, a practice theretofore permissible, of singling out a particular town or city, and passing legislation directly affecting it and no other. It was believed that the exercise of this power by the legislature led to abuses, and that a constitutional provision relieving cities from this particular form of legislative control and preserving to them their autonomy unimpaired except by general legislative action, would better subserve the purposes of good government. In the case of counties, the Constitution then permitted a classification by population only for the purpose of fixing the compensation of officers, and strictly insisted that the system of county governments should be uniform throughout the state and that the duties of the officers recognized by this system should likewise be prescribed by general and uniform law. (Const., art. XI, sec. 4 [now repealed]; art. XI, sec. 5; *Rauer* v. *Williams,* *supra.*) The provisions of the Constitution were much broader in respect to the right of the legislature to classify cities and towns than they were respecting counties, because cities containing a large population required different legislation from those composed of a few hundred inhabitants. (*Rauer* v. *Williams, supra.*) If the act creating the county office here involved is classified as a local or special law, then that act is in violation of article IV, section 25, subsection twenty-eighth of the Constitution and void.

The question then presented is whether this act may be classified as a local or special law. We think not. Article XI, section 4, prior to its repeal on June 27, 1933, provided in part that ''The Legislature shall establish a system of county governments, which shall be uniform throughout the state . . .'' The original section, article XI, section 5, read in part that ''The Legislature, by general and uniform laws, shall provide for the election or appointment, in the several counties, of boards of supervisors . . . and such other county . . . officers

as public convenience may require, and shall prescribe their duties, and fix their terms of office. It shall regulate the compensation of all such officers, in proportion to duties, and for this purpose may classify the counties by population . . ." The 1908 amendment to this section only added an additional provision in reference to grand and trial jurors. The 1928 amendment contained the same provision that the counties may be classified for the purpose of regulating the compensation of officers. The 1933 amendment was enacted, as above mentioned, but in respect to the provision in reference to classification of counties by the legislature provided that "It shall regulate the compensation of boards of supervisors, district attorneys and of auditors in the respective counties and for this purpose may classify the counties by population." The boards of supervisors in the respective counties, under the new amendment of 1933, regulate the compensation of all officers in said counties other than the boards of supervisors, district attorneys, auditors and judges of the municipal courts. The legislature (Chap. 643, Stats. 1933, p. 1674) adopted a new section (4056d) to the Political Code in conformity with the constitutional provision as adopted. The authority of the legislature to establish the office of county counsel in the several counties under the 1933 constitutional amendment, if public convenience may require, from the very wording of the act must be conceded. We do not understand that merely because section 4041.12a of the Political Code provides that in counties having a population of 100,000 or more, the board of supervisors may appoint a county counsel, necessarily classifies such county in violation of any constitutional amendment and thereby causes that section to become a local or special law as opposed to a general or uniform law.

In the early case of *Sanchez* v. *Fordyce*, 141 Cal. 427 [75 Pac. 56], the court held, under the county government act of 1901, that the provision "in townships having a population of less than six thousand there shall be but one justice of the peace and one constable" was constitutional. The court said that if they were to adopt a rule which would not allow the classification according to population, we would destroy the power of the legislature to classify counties, the power to classify school districts in proportion to population for the purpose of assigning teachers, and the power to make many other provisions which the public convenience may require. It will

be noticed that there was considerable change made in 1933 in article XI, section 5, of the Constitution compared to the original section and the previous amendments thereto. The decisions cited by respondent under the original provision and previous amendments thereto are therefore not applicable as a true guide in the construction of the 1933 amendment. The legislative history or argument advanced to the people as a reason for the adoption of the 1933 amendment is enlightening. It is therein stated that it was the purpose of the proposed constitutional amendment to vest more power in the board of supervisors and to make the government of the county more responsible to local demands. All of the cases cited by respondent were decided prior to the repeal in 1933 of article XI, section 4 of the Constitution. This was · the prohibitive section and contemplated and commanded a uniform system of county government. (*Martin* v. *Superior Court,* 194 Cal. 93, 105 [227 Pac. 762].) This left section 5 of article XI, which merely states that the legislature *"may"* classify counties for the purpose of fixing the compensation of certain designated officers. Prior to 1933, section 4 of article XI provided that "the legislature shall establish a system of county governments, which shall be uniform throughout the state. . . ." This in effect practically prohibited the classification of counties for any purpose. However, an exception was stated in the succeeding section (article XI, section 5) wherein authority was granted to classify for the purpose of fixing compensation. ■ The legislature, therefore, since the adoption of the 1933 amendment and the repeal of article XI, section 4, may now classify counties according to population for the purpose specified in the act here involved. This question was presented and similarly discussed by our own Supreme Court in *Consolidated Printing and Publishing Co.* v. *Allen,* 18 Cal. (2d) 63 [112 Pac. (2d) 884]. This classification being permissible, it is not and cannot be denied that the law purports to and undoubtedly does, in its operation and effect, apply equally and uniformly to all persons and things falling within the designated class. (*Martin* v. *Superior Court, supra.*)

■ As to the question of the legislature delegating the authority to the board of supervisors to appoint a county counsel, it seems clear from the constitutional provision as amended in 1933, that the legislature has the authority to

*provide for the appointment* and prescribe the duties of the office and fix the term thereof. The act does not designate that the legislature shall make the appointment but only requires it to *provide for the appointment*. The power to fix the compensation of such an officer by the board of supervisors has been directly given to the board of supervisors by the provisions of the act itself.

The state may, through its legislature, and in the exercise of its sovereign power and will, in all cases where the people themselves have not restricted or qualified such exercise of that power, apportion and delegate to the counties any of the functions which belong to it. (*Watson* v. *Greely,* 67 Cal. App. 328 [227 Pac. 664] ; *Scott* v. *Boyle,* 164 Cal. 321 [128 Pac. 941] ; *Barton* v. *Kalloch, et al,* 56 Cal. 95, 110; *Ryan* v. *Riley,* 65 Cal. App. 181 [223 Pac. 1027].) A statute may be conditional and its taking effect may be made to depend upon some subsequent event. Affirmative legislation may, in some cases, be adopted, of which the parties interested are at liberty to avail themselves or not, at their option. The legislature had the power to provide, in the act under consideration, that counties might come within or remain without the provisions of the act, as the board of supervisors of the respective counties might determine. (*Davis* v. *County of Los Angeles,* 12 Cal. (2d) 412 [84 Pac. (2d) 1034] ; *Board of Law Library Trustees of Orange County* v. *Board of Supervisors,* 99 Cal. 571, 573 [34 Pac. 244].) This principle has been followed in the late case of *The Housing Authority of the County of Los Angeles* v. *Dockweiler,* 14 Cal. (2d) 437, 446 [94 Pac. (2d) 794].) There is no merit to respondent's second contention.

For the reasons expressed, the writ should issue and it is so ordered.

Barnard, P. J., and Marks, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 2, 1942.