[Civ. No. 27257.   Second Dist., Div. Two.   Mar. 12, 1964.]

GREAT LAKES PROPERTIES, INC., et al., Plaintiffs and Appellants, v. CITY OF ROLLING HILLS ESTATES et al., Defendants and Respondents.

Musick, Peeler & Garrett, David P. Evans, Bruce E. Clark, Norman L. Roberts and Edward J. Riordan for Plaintiffs and Appellants.

Latham & Watkins, H. Randall Stoke, Alan N. Halkett, John P. McLoughlin, Harold W. Kennedy, County Counsel, and David D. Mix, Assistant County Counsel, for Defendants and Respondents.

KINCAID, J. pro tem.*—Petition for writ of mandate was brought by plaintiffs to prevent annexations of territory by defendants City of Rolling Hills Estates et al., by virtue of its proposed Annexation Nos. 7, 8 and 10, and test the validity of the refusal by the Los Angeles County Boundary Commission to accept for filing a proposal for incorporation of the new City of Rancho Palos Verdes. Following issuances of alternative writs a trial was had, resulting in a judgment for defendants and a dissolving of the alternative writs and stay orders. Plaintiffs appeal from this judgment.

Plaintiffs Great Lakes Properties, Inc., and Brockett are owners of property within the limits of the proposed new city, the boundaries of which include the territory encompassed by the proposed annexations.

---

*Retired judge of the superior court sitting pro tempore under assignment by the Chairman of the Judicial Council.

On August 28, 1962, the city council of defendant City of Rolling Hills Estates, hereinafter referred to as "City," authorized the filing of two annexation proposals with defendant Boundary Commission of Los Angeles County, hereinafter referred to as "Commission," and the following day filed the two annexation proposals with legal descriptions and maps thereof with said Commission.

On September 11, 1962, a Notice of Intention to Circulate a Petition for the Incorporation of a New City to be called the City of Rancho Palos Verdes, and maps and legal descriptions thereof, was filed with and accepted by the Board of Supervisors of the County of Los Angeles, hereinafter referred to as "board."

On September 12, 1962, the Commission approved the boundaries filed by the City on August 29, 1962, for Annexation Districts Nos. 7 and 8.

On September 12, 1962, following approval by the Commission, the city council adopted its resolution declaring its intention to annex the property described in Annexation Districts 7 and 8.

On September 16, 1962, the clerk of the Board of Supervisors of Los Angeles County gave notice to the City of said notice of intention to incorporate, filed with such board on September 11 by the proposed new city.

On October 15, 1962, the City filed with the Commission an additional annexation proposal designated Annexation District No. 10 of the City of Rolling Hills Estates, the territory of which was additionally within the territory proposed to be incorporated under the notice of intention filed September 11, 1962.

Thereafter, on October 15, 1962, plaintiff Brockett presented to the Commission a proposal for the incorporation of the new city. The commission rejected this proposal for incorporation and refused to accept it for filing.

Plaintiffs contend that by their filing on September 11, 1962, with the board, of a notice of intention to incorporate the new city, the boundaries of which included all of the territory sought to be annexed to defendant City of Rolling Hills Estates, all persons, including defendant City, were barred for at least 90 days from instituting or proceeding with an annexation of any of the territory sought to be incorporated as the new city. This contention is made despite the prior filing on August 29, 1962, by defendant City of its proposal to annex the territory with the Commission.

The trial court held, under section 35002 of the Government Code, that for a period of 45 days following the filing by defendant City of its annexation proposals with the Commission of its proposed Annexation Districts Numbers 7 and 8 on August 29, 1962, and of its proposed Annexation District Number 10 on October 15, 1962, no one else, including plaintiffs, could proceed to annex or incorporate any portion of the same territory. Therefore the notice of intention filed by plaintiffs on September 11, 1962, was of no force or effect since it was filed within the 45-day period following filing by defendant City of its boundaries for its proposed Districts Numbers 7 and 8. That the Commission properly rejected and refused the filing of both the plaintiffs' proposals for incorporation of September 11, 1962, and of October 15, 1962, because said proposals included territory within Annexation Districts 7, 8 and 10 and said proposals were offered within 45 days after the filing with the Commission by the City of its proposals for annexation of August 29, 1962, and October 15, 1962. That the proposals to incorporate offered by plaintiffs did not constitute a filing or submission thereof to the Commission within the purview or requirements of section 34303.5 of the Government Code and the notice of intention to circulate petition filed by plaintiffs on September 11, 1962, in no way prohibited or affected the right of the City to proceed with its proposed Annexation Districts 7, 8 and 10.

Plaintiffs challenge the holding of the trial court on the grounds that: (1) the last paragraph of Government Code section 35002, relied upon by the defendants and upheld by the trial court in its judgment, is unconstitutional in that it is violative of article IV, section 25, clauses 28 and 33 of the California Constitution; (2) even if this paragraph were constitutional, it would not give the annexing city jurisdiction as against the proponents of a new city under the circumstances of this case, but rather merely provided a 45-day waiting period during which the annexing city and the proponents of the new city might have settled their differences if they had been able to do so; and (3) exclusive jurisdiction is acquired by proponents of a corporation by the filing of the notice of intention, whereas exclusive jurisdiction is acquired by a city seeking to annex territory by the adoption of a resolution of intent to annex (Gov. Code, § 35308), not by filing of a proposal with the Commission.

At the 1961 session of the Legislature, section 35002, Gov-

ernment Code was amended by adding the last paragraph thereof which provides as follows:

"In a county having a population of 4,000,000 or more, for a period of 45 days after the filing by a city with the secretary of the boundary commission of a proposal for the annexation of territory to a city, no other proposal shall be filed hereunder for the annexation of any of the same territory to any city, or for the incorporation of any of such territory."

Plaintiffs contend that this provision of the Government Code is unconstitutional and specifically that it is violative of the 28th and 33d clauses of article IV, section 25 of the California Constitution which provide in part as follows: "The Legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: ... *Twenty-Eighth*-Creating offices, or prescribing the powers and duties of officers in counties, cities, cities and counties, townships, election or school districts. ... *Thirty-Third*-In all other cases where a general law can be made applicable."

Plaintiffs contend that section 35002 purports to require certain county officers—members of the Los Angeles County Boundary Commission—to perform their duties differently from their counterparts in other counties. That it thus violates the above quoted clause 28, while also violating clause 33 in that general laws can be made applicable to annexations and incorporations.

In support of their position that the last paragraph of section 35002 is unconstitutional, plaintiffs argue it creates a special law applicable to Los Angeles County alone without reason. That use of the words "a county having a population of 4,000,000 or more" is no different than referring to Los Angeles County by name. They rely in part on cases wherein legislative enactments applying to counties of a named class were held violative of said constitutional provisions. (*Hollman* v. *Warren*, 32 Cal.2d 351, 359 [196 P.2d 562], limiting notaries in counties of the second class (San Francisco); *Pratt* v. *Browne*, 135 Cal. 649 [67 P. 1082], fixing salaries of court reporters in counties of the thirtieth class (Ventura); *Consolidated Printing & Publishing Co.* v. *Allen*, 18 Cal.2d 63 [112 P.2d 884], establishing procedure for publication of tax delinquent property for counties of the first class (Los Angeles).)

They point out that the population of Los Angeles County according to Government Code section 28020 is 6,038,771

whereas the next most populous county is San Diego with 1,033,011; therefore the arbitrary figure of 4,000,000 in section 35002 is no different than referring to the excluded county as being one of the first class.

Plaintiffs contend that a classification of the county of largest population is not a reasonable one in the field of annexation and incorporation. That the problems of conflicting annexations, or an annexation conflicting with an incorporation, are not exclusive to Los Angeles County or to large counties in general, but have and will occur in numerous counties. If the need for the system established by the last paragraph of section 35002 exists, that need exists in many other counties.

Plaintiffs also rely on *Stout* v. *Democratic County Central Committee*, 40 Cal.2d 91, 94-95 [251 P.2d 321], holding a section of the Elections Code involved as local and special legislation wherein it attempted to permit the county central committee in ''any city and county'' to increase its membership by majority vote of the committee. The court held that the provision any city and county could only mean and apply to San Francisco and there was no rational basis why the number and method of its committee members should be different than in all other counties of the state. The court concluded this Elections Code statute applied only to San Francisco even though it is possible at some future time another such city and county may be created. Plaintiffs argue that it is equally clear that the use of the words ''a county having a population of 4,000,000 or more'' is no different than referring to Los Angeles by name or to a county of the first class.

Defendants cite the general rule that, when a legislative classification is questioned, if any state of facts can reasonably be conceived that would sustain it, there is a presumption of existence of that state of facts, and the burden of showing arbitrary action rests upon the one who assails the classification. (*People* v. *Western Fruit Growers, Inc.*, 22 Cal.2d 494, 507 [140 P.2d 13].)

They point to the conditions existing in Los Angeles County compared to all the other counties as demonstrating it well may be classified in a different manner. They say the size, congestion, growth and relation of incorporated to unincorporated territories in Los Angeles County dictate that the problems of conflicting claims to unincorporated territories

are more severe and require different treatment than elsewhere. While size of population is not always a justification for differing regulations in different counties it may be under certain circumstances. They cite the following causes as authority for the proposition that population may legislatively classify counties even though the class then consists of only one unit: *Matter of Petition of Burke,* 160 Cal. 300 [116 P. 755] (statute prohibiting sale of liquor within 1½ miles of a university having more than 1,000 students, more than 500 of whom reside thereon, etc.) ; *Sacramento etc. Drainage Dist.* v. *Rector,* 172 Cal. 385, 391 [156 P. 506] (statute disqualifying judge in reclamation district unless parties waive) ; *Ogle* v. *Eckel,* 49 Cal.App.2d 599 [122 P.2d 67] (statute providing for creation of office of county counsel in counties having population of 100,000 or more) ; *Chitwood* v. *Hicks,* 219 Cal. 175 [25 P.2d 406] (holding invalid a statute providing for judicial secretary for judge in counties of twelfth class, Riverside County, the only one).

In the latter case the court, while invalidating the involved statute, distinguished the facts therein from those in *Noel* v. *Lewis,* 35 Cal.App. 658 [170 P. 857]. The enactment in question in *Noel* created the position of secretary of the superior court applicable to all counties and cities and counties having a population of 300,000 and over, and was found not to be unconstitutional as being special or limited in its application. With reference to such act, the court in *Chitwood* v. *Hicks, supra,* said (p. 178-179) :

"It is apparent that the legislature in that act did not single out any one county of the state and create in that county the position of secretary of the court without regard to the above provision of the Constituion limiting its powers in that regard. The act was made applicable to all counties and cities and counties of the state having a certain number of inhabitants or over. If perchance only one county of the state contained the requisite population required by said act, then there was a natural and intrinsic distinction between that county and all other counties of the state, which justified the legislature in making the statute applicable to such county only.

"There can be no question that the business in the courts of the larger counties is more involved and complicated than in the smaller counties of the state. The former require a greater number of judges, and a proper correlation of the work of the various departments of the court requires not

only additional clerical assistance, but assistance of a distinctive character and different from that employed in counties with only a limited number of judges. That population of a county is a natural and intrinsic distinction justifying a classification upon that ground is evidenced by the Constitution itself, which makes the population of the various counties of the state the basis upon which the legislature may classify them for the purpose of fixing the salaries of county officers."

As pointed out in *People* v. *Western Fruit Growers, Inc., supra,* 22 Cal.2d 494, 506, the distinction between a general and a special law is that a law is a general one when it applies equally to all persons embraced in a class founded upon some natural, intrinsic or constitutional distinction; on the other hand, it is special legislation if it confers particular privileges, or imposes peculiar disabilities or burdensome conditions, in the exercise of a common right, upon a class of persons arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of the law. "Under this rule, it is apparent that the constitutional prohibition of special legislation does not preclude legislative classification but only requires that the classification be reasonable." (P. 506.)

"When a legislative classification is questioned, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of existence of that state of facts, and the burden of showing arbitrary action rests upon the one who assails the classification." (P. 507.) (See *Lelande* v. *Lowery,* 26 Cal.2d 224, 232 [157 P.2d 639, 175 A.L.R. 1109]; *Takahashi* v. *Fish & Game Com.,* 30 Cal.2d 719, 727 [185 P.2d 805]; *In re Herrera,* 23 Cal.2d 206, 212 [143 P.2d 345].)

The legislative classification here challenged is limited to any county having a population of 4,000,000 or more. Prior to adoption in 1961 of the last paragraph of section 35002, the Legislature by various enactments had endeavored to insure orderly procedures designed to curb the sometimes unseemly conduct of government agencies in their rivalry to expand by annexation or incorporation. (See *People* ex rel. *City of Torrance* v. *City of Gardena,* 192 Cal.App.2d 686, 696 [13 Cal.Rptr. 742].) In considering and adopting the 1961 amendment the Legislature may very well have taken into consideration the markedly different problems pre-

sented in territorial annexation and incorporation matters in a county so densely populated as to contain within its borders 4,000,000 or more residents as compared with others of less population. It may properly have decided that a county of such greater size contains many cities closely crowding each other with growing unincorporated areas contiguous to them. The necessary procedures to meet the varying circumstances presented in such a populous county may justify less burdensome and complicated procedures in counties with fewer residents and there seems to be no basic reason why the latter should be compelled to tailor their incorporation and annexation requirements to counties of such large size.

The enactment did not single out any single county as such in violation of the provision of the Constitution limiting the powers of the Legislature in that respect. If it so happens that only one county of the state contains the requisite population required by the act, then there was a natural and intrinsic distinction between that county and all the other counties which justified the Legislature in making the statute applicable to such county only. This distinction is not arbitrary but is a reasonable one under all the existing facts and circumstances.

■ As to their remaining grounds, plaintiffs contend in effect that the Legislature, by its adoption of the last paragraph of section 35002 did not intend to prohibit a valid filing with the board of supervisors of a notice of intention to incorporate within the 45-day period following the filing with the Commission of a proposal to annex the same territory but intended only to prohibit the filing of a ''proposal'' for the incorporation with the boundary commission. It would follow therefore that if a notice of intention to incorporate was filed with the board during such 45-day period then the proponents of incorporation would thereupon receive a 90-day period of protection under section 34302.6.

Such a construction of the 1961 amendment to section 35002 is plainly contrary to the intent of the Legislature in prescribing new and different procedures for incorporation and annexation of additional territory in counties of 4,000,000 or more as contrasted from those of lesser population. ■ By its phraseology, this paragraph means that in counties of the prescribed or more population, for a period of 45 days after the filing by a city with the secretary of the boundary commission of a proposal for the annexation of territory to a city, no other proposal shall be filed for the

annexation of any of the same territory to any city and no other proposal by a notice of intention to incorporate shall be filed. ▮ That a notice of intention to incorporate is no less a proposal than is a petition seeking the annexation of territory to a city (§ 35002) is shown by section 34302.5, in part as follows: " 'Before circulating a petition seeking the incorporation of a new city, the *proponents* shall file a notice of intention to do so with the board of supervisors. The notice shall contain . . . signers as *proponents* . . . of the territory proposed to be incorporated, and shall designate . . . the person to act as chairman of the *proponents* . . .'' And by section 34300, the first section in the Government Code dealing with the incorporation of a new city defining ''board of supervisors'' or ''board'' as meaning such a board ''of the county in which the land comprising the city *proposed* to be incorporated is situated.'' Likewise the following section 34301 defining ''qualified signer'' as meaning the owner or purchaser of land ''within the limits of the city *proposed* to be incorporated.'' (Italics added).

▮ It therefore follows that, in a county having a population of 4,000,000 or more, for a period of 45 days following filing by a city with the secretary of the boundary commission of a proposal for the annexation of territory to such city no other city could commence proceedings to annex and no persons could seek to incorporate by filing a notice of intention to circulate a petition for the incorporation of a new city of any part of the same territory. ▮ If, during this 45-day period the city should have its proposed boundaries approved, and should then adopt its resolution to annex, it could proceed to annex the territory, or, if a majority protest was filed, the proceedings would be terminated. If such majority protest was filed or the proceedings terminated then another city or a proposed incorporation would be free to commence proceedings to acquire the territory.

The judgment is affirmed.

Herndon, Acting P. J., and Roth, J., concurred.

A petition for a rehearing was denied April 8, 1964, and appellants' petition for a hearing by the Supreme Court was denied May 6, 1964.