[Civ. No. 50389. Second Dist., Div. Two. Aug. 25, 1977.]

CITY OF LOS ANGELES et al., Plaintiffs and Appellants, v.
CITY OF ARTESIA et al., Defendants and Respondents.

452

**COUNSEL**

Burt Pines, City Attorney, Thomas C. Bonaventura, Assistant City Attorney, and Ronald A. Tuller, Deputy City Attorney, for Plaintiffs and Appellants.

Alexander Googooian, City Attorney, Graham A. Ritchie, City Attorney, John H. Larson, County Counsel, Roger M. Whitby, Deputy County Counsel, John Sanford Todd, City Attorney, William Camil, Charles R. Martin, Samuel Siegel and Glenn R. Watson for Defendants and Respondents.

OPINION

FLEMING, J.—As aptly stated by the trial judge in his memorandum opinion, "[t]his action involves the latest chapter in the continuing saga of that remarkable governmental development universally known as the 'Lakewood Plan'." Pursuant to that plan defendant County of Los Angeles (County) has since 1954 contracted with numerous cities within the county limits—beginning with the City of Lakewood—to furnish them police protection, thereby eliminating the necessity for multiple independent municipal police forces and the needless duplication of cost and effort that such multiple police forces would engender. Some 30 of the County's 78 cities have contracts with County for the services of the County sheriff. (These cities are all defendants herein.) Since the start of the plan there has been considerable political dispute over the amounts to be paid by the contracting cities for the county police protection. In 1973 the Legislature entered the arena with the enactment of Government Code section 51350, here under challenge, providing as follows:

"A county having a population of 6,000,000 or more which provides services through its appropriate departments, boards, commissions, officers or employees, to any city pursuant to contract or as authorized by law, shall charge the city only those additional costs which are incurred in providing the services so contracted or authorized. A county shall not charge a city contracting for a particular service, either as a direct or an indirect overhead charge, any portion of those costs which are attributable to services made available to all portions of the county, as determined by resolution of the board of supervisors, or which are general overhead costs of operation of the county government. General overhead costs, for the purposes of this section, are those costs which a county would incur regardless of whether or not it provided a service under contract to a city.

"Any determination of general overhead costs shall be subject to court review as to the reasonableness of such determination."

In essence the statute forbids the County to charge contracting cities for the overhead costs of police protection that the County would incur in any event in the absence of the contracts. The legislative purpose of the statute is set forth in section 2, statutes 1973, chapter 1068, as follows: "It is the intent of the Legislature to encourage intergovernmental contracts which eliminate the need for duplicate facilities, equipment,

and personnel, and which thereby reduce the overall cost of government."

Appellants City of Los Angeles (City) and individual council members and taxpayers of City brought this action as a taxpayers' suit under Code of Civil Procedure section 526a to enjoin implementation of the act and recover for County the amount represented by reductions in charges to the contracting cities which County has made pursuant to the statute. The trial court rendered summary judgment for defendants. The points still maintained on this appeal are as follows: (1) Section 51350 is unconstitutional as (a) special legislation and (b) an enactment denying equal protection of the laws to appellants; (2) County has improperly applied the statute retroactively to existing contracts; (3) a triable issue of fact remains as to whether County abused its discretion in determining the amount of cost reductions.

## FACTS

Section 51350 of the Government Code was added by chapter 1068 of Statutes 1973, effective 1 January 1974. At the time of its enactment respondent County was the only county in California with a population greater than 6 million. It provided contract services to 78 cities, including contracts for law enforcement services with the 30 defendant cities here. The contracts for law enforcement services in effect on 1 January 1974, were each for five years ending 30 June 1976, with provisions for termination by either party at the first of any fiscal year during the term (July 1). In October 1973 the auditor-controller of County recommended that the cost reductions necessary under the statute be made effective 1 January 1974, the effective date of the statute, and made specific recommendations on the nature and amount of reductions. The board of supervisors adopted these recommendations on 20 November 1973. Total reduction in charges for six months amounted to an estimated $617,500, or a 7.5 percent reduction. The City-County agreement for Lakewood, the model for all contracts, of which the trial court took judicial notice, provided for periodic cost adjustment to reflect changes in salaries of county employees and other changes in costs of services, and it authorized a city to terminate the agreement after written notice of rate increase, on 60 days notice of termination. (Pars. 8 and 10 of agreement.)

One of the assumptions forming the basis for the auditor-controller's recommendation of cost reduction is that "if contract services program

was terminated, the sheriff's department may continue operations at all stations." Plaintiff's challenge this assertion. There was also a finding in the Booz, Allen & Hamilton report prepared for defendant County (a study of equitable methods of pricing law enforcement services by counties) that the contract program comprised 48 percent of the caseload, 41 percent of the population, and utilized 36 percent of the general law patrol and traffic cars of the sheriff's department.

■ *Constitutional Challenge to Section 51350.* The test of the statute's validity under either the special legislation or the equal protection challenge is the same, namely, whether there is a rational relationship between the purpose of the enactment—to encourage police service contracts—and the singling out of Los Angeles County because of its size as the sole county affected by the statute. Numerous cases discussing the special legislation prohibitions of the California Constitution (art. I, § 7; art. IV, § 16) uphold legislation that singles out a particular class, if any rational connection exists between the statutory classification and the statute's purpose: e.g., *Great Lakes Properties, Inc.* v. *City of Rolling Hills Estates* (1964) 225 Cal.App.2d 525, 533-534 [37 Cal.Rptr. 448]; *Sacramento Municipal Util. Dist.* v. *Spink* (1956) 145 Cal.App.2d 568, 572-573 [303 P.2d 46]; *Sacramento M. U. Dist.* v. *P. G. & E. Co.* (1942) 20 Cal.2d 684, 693 [128 P.2d 529]; *City of Los Angeles* v. *Standard Oil Co.* (1968) 262 Cal.App.2d 118, 123-124 [68 Cal.Rptr. 512]; *Lelande* v. *Lowery* (1945) 26 Cal.2d 224, 232 [157 P.2d 639, 175 A.L.R. 1109].) Similarly, under the equal protection clauses of the federal and California Constitutions (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7), since a fundamental right is not here involved (see *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 145-146 [93 Cal.Rptr. 234, 481 P.2d 242]), the test is whether the statute bears some rational relationship to a legitimate state purpose. (*Ganschow* v. *Ganschow* (1975) 14 Cal.3d 150, 160 [120 Cal.Rptr. 865, 534 P.2d 705]; *City of Los Angeles* v. *Crawshaw Mortgage & Inv. Co.* (1975) 51 Cal.App.3d 696, 699-700 [124 Cal.Rptr. 363].) Appellants concede that no fundamental right is involved in fixing charges to cities for police protection, but they argue that the statute in question is totally without relationship to the size of the county affected. Further, they argue that the statute cannot possibly accomplish its purpose—to encourage cities to contract with County for police protection—because 30 cities have already done so and cannot be further encouraged, and the remaining 40 with independent police departments will not contract in any case. Appellants have not documented these assertions, and they are anything but self-evident. The 30 cities that have contracted are free to disavow such contracts at least once a year, and if County is permitted to charge

discouragingly high rates it is at least conceivable that some of these cities might be motivated to establish their own police departments. Further, if County's charges are highly reasonable it is not inconceivable that a city having its own police force might opt to discontinue that force and contract with County; if the city so opted, it could presumably sell some of its police equipment to County and arrange for transfer of its police officers to a county payroll. Certainly the stormy political history of the Lakewood Plan, which defendants have documented, may have influenced the Legislature to enact a limitation on County's charges in hopes of further securing these contracts. The contracting status of the 30 defendant cities was not immutably and permanently established in perpetuity when the Legislature enacted section 51350.

Legislation applicable solely to Los Angeles County is valid if there is any conceivable state of facts which can reasonably support difference in legislative treatment based on population. (*Board of Education* v. *Watson* (1966) 63 Cal.2d 829, 833 [48 Cal.Rptr. 481, 409 P.2d 481].) The trial court found the following indications of a possible reasonable basis for the statute: (1) County with its 7 million population and 78 cities exhibits unmatched complexity of local government relationships in the state; (2) the higher incidence of crime in a heavily populated urban county may best be handled by encouraging consolidation of police forces in the area. These reasons are adequate to justify the statute. (Cf. *Board of Education* v. *Watson, supra* [sustaining Ed. Code, § 20811 requiring the county assessor to supply advance notice of the assessed valuation to the taxpayer only in Los Angeles County]; *Great Lakes Properties, Inc.* v. *City of Rolling Hills Estates, supra* [sustaining Gov. Code, § 35002 temporarily freezing annexation proceedings in counties over 4 million].) Defendants have cited numerous examples of California statutes that apply to Los Angeles County or City alone, and exclusive treatment of public entities on the basis of population is a long-accepted legislative technique of California municipal law. (E.g., Rev. & Tax. Code, § 1601 *ff.*; Health & Saf. Code, §§ 3111.5, 32127.1; Code Civ. Proc., § 206; Gov. Code, § 66474.60 *ff.*; and many others.) In resisting motion for summary judgment appellants must allege some competent evidence to support a finding that the challenged statute has no reasonable or rational basis. (Cf. *Burke* v. *Hibernia Bank* (1960) 186 Cal.App.2d 739, 743-744 [9 Cal.Rptr. 890].) Since they have not carried this burden we find the statute constitutional.

■ *Retroactive Application.* Appellants argue that a statute is presumed to be nonretroactive, absent express indicia of legislative

intent that it be made retroactive. (*DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 172-173 [18 Cal.Rptr. 369, 367 P.2d 865].) The question is solely one of legislative intent, in that the contracting parties are public entities and cannot claim impairment of contract or violation of due process as a result of retroactive interference with contract. (*Williams* v. *Baltimore* (1933) 289 U.S. 36 [77 L.Ed. 1015, 53 S.Ct. 431]; *Trenton* v. *New Jersey* (1923) 262 U.S. 182 [67 L.Ed. 937, 43 S.Ct. 534, 29 A.L.R. 1471]; *State of California* v. *Marin Mun. W. Dist.* (1941) 17 Cal.2d 699, 705-706 [111 P.2d 651].) The Supreme Court has recently commented on the legislative intent/retroactivity problem in *In re Marriage of Bouquet* (1976) 16 Cal.3d 583 [128 Cal.Rptr. 427, 546 P.2d 1371]. The presumption is against retroactivity, said the court, but the presumption is rebuttable; and the trier of fact may examine all pertinent indicia of legislative intent. In *Bouquet,* the court looked to the unconstitutionality of the prior law and to a letter of intent written by the assemblyman who drafted the bill and published by the Senate, in order to conclude that amended Civil Code section 5118 should be applied retroactively.

The question here, however, is not strictly one of retroactive application. The cost reductions did not apply retroactively to services already rendered, but rather applied to services rendered after the effective date of the statute. The reductions did apply, of course, to existing contracts. However, those contracts were constantly subject to modification. Although the modification provisions were probably primarily intended to permit County to increase its charges in an inflationary economy, their terms permitted reduction as well. Under those circumstances the application of the statute is not really retroactive. It makes little sense to assume that the legislature intended County continually to modify its charges under the contracts without reference to section 51350 until the formal expiration of the existing contract terms on either 1 July 1974, or 30 June 1976 (depending on one's interpretation of the contract term length).

As the trial court pointed out, since the Legislature was presumably aware that the contracts were subject to regular readjustment of charges, it is unlikely "that the Legislature intended the effectiveness of the legislation to await the end of the contract, or the end of the fiscal year, as the case may be." Accordingly the trial court found, and we agree, that the only reasonable interpretation of legislative intent here, after considering all pertinent factors, is that the statute was intended to apply to services rendered after its effective date.

■ *Abuse of Discretion in Fixing Reductions.* Section 51350 provides for court review of the reasonableness of the board of supervisors' determination of the amount of cost reductions. Appellants claim the reductions here are not reasonable. Their basis for this claim is that one of the underlying premises of the reduction calculation is the assumption that "if contract services program was terminated, the Sheriff's Department may continue operations at all stations." Appellants find this assertion inherently incredible in light of the finding in the Booz, Allen & Hamilton report, referred to *ante,* that the contract program comprises 48 percent of the caseload, 41 percent of the population, and utilizes 36 percent of the general·law patrol and traffic cars of the sheriff's department. They do not assert any facts indicating that operations would terminate at any stations under any conditions, nor do they claim any bad faith, collusion, or malfeasance on the part of the Board in fixing the charges. They do claim that although they have not yet discovered such evidence, they will discover it by the time of trial, and therefore they should not be required to prove their case at the stage of summary judgment.

Although appellants are not expected to prove their case at the summary judgment stage, they must allege a case by way of affidavits of ultimate facts so that the court can determine whether triable issues of fact exist. *(Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]; *Jacobs* v. *Retail Clerks Union, Local 1222* (1975) 49 Cal.App.3d 959, 966 [123 Cal.Rptr. 309]; *People* v. *Rath Packing Co.* (1974) 44 Cal.App.3d 56, 61-62 [118 Cal.Rptr. 438].) When affidavits in support of the motion for summary judgment state facts which would sustain a judgment, and counteraffidavits do not contradict them, summary judgment is proper. *(Burke* v. *Hibernia Bank* (1960) 186 Cal.App.2d 739, 743-744 [9 Cal.Rptr. 890].) At bench, defendants submitted extensive declarations indicating the methods used to calculate cost reductions, and the trial court found no indication that these calculations were flawed or unreasonable. Appellants' unsubstantiated theory that one of the board's assumptions may be inaccurate falls far short of raising a triable issue of fact of the reasonableness of the cost reductions. We must bear in mind that the fixing of charges is a quasi-legislative act, which the court does not independently review, and which is only subject to challenge if the board exceeded its jurisdiction; committed errors of law; manifestly abused its discretion; or exhibited fraud, collusion or bad faith. (See 2 Cal.Jur.3d, Administrative Law, §§ 282-287, pp. 534-547; Cal. Administrative Mandamus (Cont.Ed.Bar 1966), pp. 17, 399, 401, and supplement thereto, May 1977, § 2.9,

pp. 14-16; *California Assn. of Nursing Homes etc., Inc.* v. *Williams* (1970) 4 Cal.App.3d 800, 810 [84 Cal.Rptr. 590, 85 Cal.Rptr. 735]; *City Council* v. *Superior Court* (1960) 179 Cal.App.2d 389, 393 [3 Cal.Rptr. 796].) We conclude that appellants have not alleged sufficient facts to raise triable issues of fact on the reasonableness of the board's calculations.

Judgment for defendants is affirmed. Appellants to bear costs.

Roth, P. J., and Beach, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 27, 1977.